Steve MONTEZ, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4339.

Supreme Court of Wyoming.

Nov. 12, 1974.

Rehearing Denied Dec. 13, 1974.

Frederick G. Loomis, of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellant.

David B. Kennedy, Atty. Gen., Jerome F. Statkus, Asst. Atty. Gen., Cheyenne, Stuart S. Healy, Legal Intern for Attorney General's Office, and Law Student, University of Wyoming, for appellee.

Before Parker, C. J., and McEWAN and McCLINTOCK, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Defendant, Steve Montez, was indicted for five violations of unlawfully delivering a controlled substance, one for marijuana, December 6, 1972; another for heroin on the same day; one for marijuana on December 12; another for heroin the same date; and still another for cocaine on December 13. These indictments were consolidated for trial and defendant was found guilty by a jury in each instance and sentenced to a term of one and a half to two years in the penitentiary. Defendant had moved for judgment of acquittal at the conclusion of the State's case and again after the conclusion of his case. Subsequent to the verdict, defendant filed timely motions for an arrested judgment, acquittal, and new trial. All of these were denied. On appeal, defendant urges a lack of substantial evidence to support the guilty verdicts.

The gist of the State's case was that Deloyd Quarberg, an agent for the attorney general's office, made the purchases from defendant, being introduced to him by one Willodean Cullen, who was on probation and said she wanted to know what she could do to help so she did not go to prison because of another possible charge against her. According to Quarberg, Cullen was with him at the time of each of the alleged

deliveries. His testimony was definite and unequivocal that:

1. On December 6, 1972, he purchased a "lid of marijuana and a dime size packet of heroin," paying twenty dollars, defendant laying the controlled substances on the coffee table, from which Quarberg picked them up.

2. On the afternoon of December 12 he purchased a lid of marijuana from defendant for twelve dollars. Later that evening he received four "dimes" of heroin from defendant at ten dollars a dime, giving him forty dollars and defendant handing him the four packets.

3. On December 13 he purchased a gram of cocaine from defendant, giving him forty-five dollars for it, defendant handing the cocaine to him.[1]

Defendant took the stand and gave his version of the occurrences on the three mentioned dates, admitting being present each time but insisting that Cullen had introduced and recommended Quarberg to him and that controlled substances were furnished to him by Cullen who asked him to profess ownership because she owed Quarberg money, which would otherwise be deducted from the sale. His exact words regarding the December 6 transaction were illustrative:

"* * * she [Cullen] asked me, her friend, that she owed him some money and that if I would tell him the dope was mine she wouldn't have to pay him, you know, because if he knew that the dope was hers he would take it out for the money that she owed him. So I told her that I would do it because I had wrecked her car, see, and I owed her a favor. * * *"

He denied actually giving Quarberg the substances but conceded in some instances that he had put them on the table and that Quarberg had picked them up, Cullen receiving the money.

On rebuttal Quarberg testified that on December 6 defendant had said he was facing a charge in Mexico where he had been picked up with $9,000 worth of dope and told of other involvement and drug activities in various states. However, defendant denied that he had ever had such conversation with Quarberg.

It is correctly argued in the appeal that under Rule 30, W.R.Cr.P., defendant's motion for an acquittal as well as his motions for new trial raised the question of sufficiency of the evidence, which matter should have been determined within the sound discretion of the trial court. Opie v. State, Wyo., 422 P.2d 84, 85. However, it is contended that the overruling of the motions was error in that the court abused its discretion since the guilty verdicts were against the weight of the evidence either because he did not commit the offense or was entrapped into committing it. He discusses entrapment at some length, quoting Sherman v. United States, 356 U.S. 369, 372–373, 78 S.Ct. 819, 2 L. Ed.2d 848, 851, which in part states:

"* * * Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.' 287 U.S. [435] at page 442 [53 S.Ct. 210, at page 212, 77 L.Ed. 413]. Then stealth and strategy become as objectionable police methods as the coerced confession and the unlawful search. * * *

"However, the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. * * * To determine whether entrapment has been established, a line

---

1. There is no dispute as to the nature of these controlled substances.

must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. The principles by which the courts are to make this determination were outlined in *Sorrells* [v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249]. On the one hand, at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an 'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence. * * * "

We do not question the correctness of that pronouncement nor of our own in Higby v. State, Wyo., 485 P.2d 380, 384, "Entrapment does not arise where one is ready to commit the offense, given but the opportunity, and suspected persons can be tested by being offered an opportunity to transgress the law although they may not be put under any extraordinary temptation or inducement." [2] We are thus in agreement with defendant's concept of the basic law applicable to entrapment, but we fail to understand how he can say as he does that there is here either no delivery or entrapment *as a matter of law*. The difficulty with that concept is that it assumes that defendant's account of what happened on December 6, 12, and 13, was binding on the jury. Such assumption is completely erroneous. There was a substantial conflict between defendant's evidence and that of Quarberg. This conflict renders the testimony of either one or the other of the witnesses suspect, and of course, determining the credibility of the witnesses is a province of the jury. State v. Hines, 79 Wyo. 65, 331 P.2d 605, 607, certiorari denied 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d

1261. The mentioned conflict of the testimony does not relate directly to defendant's statements that controlled substances were given to him by Cullen and that he professed they belonged to him as a favor to her, which testimony was not rebutted. Nevertheless, this is an occasion for the application of the rule that if a witness testifies falsely as to any material part of his testimony his testimony may be disregarded as a whole. Parkel v. Union Pac. Coal Co., 69 Wyo. 122, 237 P.2d 634, 635–636; United States v. Foster, S.D.N.Y., 9 F.R.D. 367, 389. It follows that the substantiality of the evidence to support the verdict, judgment, and sentence in this case is a mixed question of fact and law. We have already discussed the subject of entrapment at some length. If the defendant's testimony had been found by the jury to be true, that is, that he had not been connected with drugs and the drug business previously and if Quarberg or Cullen had implanted in the mind of an innocent person the disposition to commit the offenses and had induced the commission the jury would have been obliged to acquit on the ground of entrapment. In so saying, we would, of course, include the circumstance of Cullen's alleged procuring defendant to sell controlled substances which belonged to her—an obvious entrapment. If on the contrary, the jury had found, as it must have, that portions of the defendant's testimony were false, it would have been within its province to disregard defendant's testimony entirely.

A searching review of the record discloses sufficient testimony to constitute substantial evidence for the support of the verdict and sentence.

Affirmed.

---

2. The holding of a recent case on the subject is significant: " * * * there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366.