**Lonnie LESSARD, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 85–75.**

Supreme Court of Wyoming.

May 21, 1986.

Wyo. Public Defender Program: Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Darold W. Killmer, Legal Intern, Cheyenne, for appellee.

Before THOMAS, C.J., and ROONEY,* BROWN and CARDINE, JJ., and GUTHRIE, J., Retired.

THOMAS, Chief Justice.

The first issue presented in this appeal is whether a verdict finding Lonnie Lessard guilty of one count of sexual assault and one count of aggravated burglary must be set aside in view of the findings in the same verdict of not guilty with respect to two other counts of sexual assault which were alleged to be based upon the same transaction. A second issue is raised which asserts error in the admission of expert testimony concerning the reactions of victims of sexual assault. We hold that there is no error in the admission of the expert testimony and that the divergent findings in the jury's verdict are not a basis for any

* Retired November 30, 1985.

claim of error on appeal. The judgment and sentence entered by the trial court is affirmed.

Lessard was charged with three counts of sexual assault in the first degree in violation of § 6–2–302(a)(i) and (ii), W.S. 1977 (June 1983 Rev.),[1] and one count of aggravated burglary in violation of § 6–3–301(a) and (c)(ii), W.S.1977 (June 1983 Rev.).[2]

The case was tried to a jury which found Lessard guilty of the first count of first degree sexual assault and the count of aggravated burglary. By its verdict the jury found him not guilty of the second and third counts of first degree sexual assault. Lessard then was sentenced to 10 to 25 years on each of the counts of which he was convicted, with the sentences to run concurrently, and with credit given for time in custody awaiting trial. This appeal is taken from the judgment and sentence imposing the two concurrent terms of imprisonment.

· In the Brief of the Appellant Lessard states the issues to be:

"1. Whether in light of Appellant's acquittal on two counts of first degree sexual assault, there exists insufficient evidence to support his conviction of one count of first degree sexual assault and one count of aggravated burglary.

"2. The Court erroneously permitted the introduction of an expert's testimony that [the victim's] behavior during the course of the alleged sexual assault as [the victim] related it to the expert was consistent with [the victim] having been sexually assaulted."

In its Brief of the Appellee the State of Wyoming sets forth the issues to be resolved in this way:

"I. There exists sufficient evidence to support appellant's conviction of one count of first degree sexual assault and one count of aggravated burglary.

"II. Admission of expert testimony was within the discretion of the trial judge and does not constitute grounds for reversal."

Lessard first met the victim when he and a friend of the victim and her husband stopped at the victim's residence for the purpose of borrowing money to buy alcoholic beverages. The victim loaned them the money, taking the friend's impact set and Lessard's tool box as collateral, and they left. The friend and Lessard, accompanied by Lessard's father, then returned to the victim's home with beer and whiskey. The victim's husband was out of town in connection with his employment, and she and her young child had other visitors, a married female friend and the friend's two children. The victim, her female friend and the three men played some parlor games and consumed alcoholic beverages until the three men manifested some unacceptable conduct. The women asked them to leave and they did so.

Two days later Lessard went back to the victim's home to repay the loan and re-

---

**1.** Section 6–2–302(a)(i) and (ii), W.S.1977 (June 1983 Rev.), provides in pertinent part:

"(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;

"(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats; * * *."

**2.** Section 6–3–301(a) and (c)(ii), W.S.1977 (June 1983 Rev.), provides in pertinent part:

"(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

\* \* \* \* \* \*

"(c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both, if, in the course of committing the crime of burglary, the person:

\* \* \* \* \* \*

"(ii) Knowingly or recklessly inflicts bodily injury on anyone; or"

\* \* \* \* \* \*

trieve the collateral which had been left with her. Lessard testified that the victim was apprised of the fact that he had no place to stay and that he had been sleeping in his car. He said that the victim invited him to stay at her house any time he needed a place to stay. In her testimony at the trial the victim controverted this claimed invitation.

The next day the victim and her infant child visited at the home of her husband's aunt and uncle. She returned to her residence that evening, put her infant child to bed, and made some phone calls, including a telephone call to her husband. She testified that she then locked the doors and the windows and went to bed at about 11:00 P.M. On that day Lessard traveled to Hardin, Montana, with his father, and on the trip back to Buffalo they were partying and drinking most of the way. They arrived in Buffalo late in the evening, and Lessard went to a friend's house where he drank some beer. Lessard then went on to the Buffalo Bar for a drink, and after that he went to JR's for drinking and dancing until some time after midnight. He then went back to the Buffalo Bar where he met a friend, and the two of them went to another woman's home where they were told to go away.

Following this Lessard went to the victim's home. Lessard's story, as related in his trial testimony, was that he drove to the victim's house, knocked on the door and rang the doorbell, but received no response to his efforts to summon someone to the door. He then tried the front door, and, having discovered that it was unlocked, he entered and hollered to announce his presence. He testified that ultimately he found the victim asleep in the bedroom, woke her up and asked permission to "crash" there. According to Lessard the victim granted permission; they spent some time visiting; one thing led to another; and they engaged in consensual intercourse but only one time. After that Lessard went into the kitchen for a drink of water, and he noticed that the kitchen window was broken. He offered to return later in the day and fix the window. Lessard testified that about

5:00 or 5:30 A.M. the victim asked him to leave so that the neighbors would not see his car and infer that he had spent the night. He said that they agreed that he would return later to repair the window, and the victim told him how to enter the house using a credit card to force the lock if he found the door to be locked. Lessard stated that he then left, but he did pause outside the house to inspect the window so that he would know what repair materials he would need and in the process he did touch the broken glass with his fingers.

The victim's account was entirely different. She said that she was first awakened by the cries of her infant child who was in bed beside her and that she discovered Lessard straddling her waist with one knee on each side of her. Lessard demanded that she remove her clothing, but she declined. Lessard then began to remove his clothing and she kicked him in the face. This caused him to lose his balance and fall away from the bed, but he recovered before she could get away. The victim testified that Lessard then told her that if she ever wanted to hold her infant son again she would do what he wanted. She testified that he initially attempted to force her to perform fellatio, but she gagged when his penis came in contact with her lips, and that he then forced her to submit to sexual intercourse which was painful for her because of recent cervical surgery. She testified that some 20 minutes later Lessard repeated the act of intercourse with her and that after approximately another 45 minutes he had sexual intercourse with her a third time. According to her testimony it was after this last assault that they went into the kitchen and discovered the broken window. She said that Lessard stayed in her home until about 5:45 A.M. and that he then told her he would return later. She admitted that she did ask him not to tell anyone that they had had sex.

Immediately after Lessard left the victim telephoned her husband's aunt and uncle who summoned the police. The police officers took the victim to the hospital for an examination which revealed that the victim

indeed had experienced recent sexual intercourse. Upon investigation the police officers found Lessard's fingerprints on broken fragments of glass which were outside the victim's home. When Lessard returned to the house later in the morning the police were present pursuing their investigation, and Lessard told them that his fingerprints would be all over the window. Lessard was not arrested at that time although he did make a statement to the police officers. Still later in the day Lessard went to the police station as he had been instructed to do, and at that time he was arrested for the offenses which were charged in the information.

■ Lessard's argument in support of his first claim of error is complex and sophisticated. He acknowledges that in *Clegg v. State*, Wyo., 655 P.2d 1240 (1982), this court dealt with a very similar situation in which there were findings of guilty of three counts of first degree sexual assault and findings of not guilty with respect to another three counts of first degree sexual assault. To avoid the result dictated by *Clegg v. State*, supra, the appellant turns to *Amin v. State*, Wyo., 695 P.2d 1021 (1985), a case involving the propriety of instructions on lesser included offenses. In that case this court held that a lesser included offense instruction need not be given in a case in which the evidence discloses that the defendant is guilty either of the greater offense charged or is not guilty at all. The justification for a refusal to give the lesser included offense instructions in such an instance is that it invites the jury to speculate or compromise. Lessard contends that in his case, as in *Amin v. State*, supra, the evidence discloses that he either was guilty of three counts of first degree sexual assault and the aggravated burglary or that he really did nothing wrong. He then argues that the inconsistent verdicts demonstrate that the jury either speculated on his guilt or made an improper compromise. Lessard reasons that if it is improper, as held in *Amin v. State*, supra, to instruct the jury in such a way that it may speculate or compromise, obviously, it is improper to permit a verdict

to stand which manifests speculation or compromise.

Lessard's case is quite different form the authority upon which he relies. In *Amin v. State*, supra, this court, following earlier precedents on the subject, held that a lesser included offense instruction was not required in an instance in which the only evidence demonstrated that the accused either was guilty of the charged offense or was not guilty of any crime. The court pointed out that if a rational trier of fact could convict of a lesser offense but acquit of the greater then the lesser included offense instruction should be given; but to justify the giving of a lesser included offense instruction there must be a conflict in the evidence as to the existence of some element which distinguishes the charged offense from the lesser included offense. *Amin v. State*, supra, 695 P.2d at 1028, quoting *State v. Yarbrough*, 131 Ariz. 70, 638 P.2d 737, 740 (1981). If there is no conflict in the evidence with respect to the distinguishing element then no instruction with respect to the lesser included offense should be given because in that situation it is not necessary for the jury to make a determination as to which evidence, including the different aspects of any witness' testimony, it should believe in resolving any factual issue as to the existence of the disputed element. *Clegg v. State*, supra; *Brown v. State*, Wyo., 581 P.2d 189 (1978); *Montez v. State*, Wyo., 527 P.2d 1330 (1974). In this case there indeed was a conflict in the evidence which justified the submission of all the charged offenses to the jury, but in resolving that conflict in the evidence, the jury, as in *Clegg v. State*, supra, was permitted to find as it did.

The fatal flaw with respect to Lessard's argument is that it does not take into account the fact that error in failing to offer a lesser included offense instruction which is disadvantageous to a defendant is subject to review on appeal whereas an inconsistency in verdicts does not present an issue that is subject to review on appeal. In essence the difference is that our system of jurisprudence does not hold a judge

or jury accountable for those errors which may be favorable to an accused, but it does require accountability for mistakes that are not favorable to the accused. Even though the ruling in favor of the accused is erroneous and results in an acquittal the constitutional protection against double jeopardy inhibits any demand that the judge or the jury be held accountable for that error. Contrary to Lessard's claim that the inconsistency in these verdicts demonstrates jury conjecture or compromise which requires reversal the correct resolution is that such verdicts do not present any issue for review.

In *State v. Hickenbottom*, 63 Wyo. 41, 178 P.2d 119, 127 (1947), this court quoted with approval from the opinion of Justice Holmes in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In that case Justice Holmes, quoting in part from Judge Learned Hand, explained that:

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. Latham v. Reg. 5 Best & S. 635, 642, 643; *Selvester v. United States*, 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029 [1898]. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. As was said in *Steckler v. United States* (C.C. A.2d) 7 F.(2d) 59, 60 [1925]:

'The most that can be said in such cases is that the verdict shows either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'

"Compare *Horning v. District of Columbia*, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 [1920].

"That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."

This concept, which may be characterized as recognition of jury nullification, appears to be the rule followed in the courts of the United States. E.g., *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984); *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 49, reh'g denied, 320 U.S. 815, 64 S.Ct. 367, 88 L.Ed. 492 (1943); *Young v. United States*, 168 F.2d 242, 246 (10th Cir. 1948); *Catrino v. United States*, 176 F.2d 884 (9th Cir.1949); *Coil v. United States*, 343 F.2d 573, 576 (8th Cir.1965); *United States v. Lester*, 363 F.2d 68 (6th Cir.1966); *United States v. Magnus*, 365 F.2d 1007, 1010 (2nd Cir.1966); *Odom v. United States*, 377 F.2d 853, 857 (5th Cir.1967); *United States v. Lloyd*, 425 F.2d 711, 713 (5th Cir.1970); *United States v. Livengood*, 427 F.2d 420, 423 (9th Cir.1970); *United States v. Bevins*, 430 F.2d 601, 603 (6th Cir.1970); *United States v. Harary*, 457 F.2d 471, 479 (2nd Cir.1972); *United States v. Littlewind*, 551 F.2d 244, 246 (8th Cir. 1977); *United States v. Standefer*, 610 F.2d 1076, 1096 (3rd Cir.1979); *United States v. D'Angelo*, 598 F.2d 1002, 1005 (5th Cir.1979); *United States v. Jacobs*, 632 F.2d 695, 697 (7th Cir.1980); *Smith v. Balkcom*, 660 F.2d 573, 581, modified, 671 F.2d 858 (5th Cir.1982), cert. denied, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982); *United States v. Cargo Service Stations, Inc.*, 657 F.2d 676, 685, reh'g denied, 664 F.2d 291 (5th Cir.1981); *United States v. Colson*, 662 F.2d 1389, 1393 (11th Cir.1981); *United States v. Upshaw*, 685 F.2d 1202, 1203 (9th Cir.1982); *Stewart v. Blackburn*, 746 F.2d 262, 264 (5th Cir. 1984), cert. denied, —— U.S. ——, 105 S.Ct. 1401, 84 L.Ed.2d 788 (1985); *United States v. Swaim*, 757 F.2d 1530, 1536 (5th Cir. 1985), cert. denied, —— U.S. ——, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985).

■ In *State v. Hickenbottom,* supra, this court held that in any instance in which any given element of any charged offense is different from the elements of another charged offense, then divergent verdicts with respect to those charged offenses are not inconsistent. This is so even though the same evidence will establish the rest of the elements of both charges. Such verdicts do not present a basis for a claim of error because they do not afford any ground for relief from the judgment and sentence of the court. This rule is in harmony with that of the federal courts and a majority of the courts of other states. See cases cited in Annot., 18 A.L.R.3d 259 (1968); Wright, Federal Practice and Procedure: Criminal 2d § 514 (1982). The rule establishes the proposition that inconsistent verdicts in criminal cases have no legal significance save in the instance of double jeopardy. Even though the same evidence may be relied upon to prove the elements of crimes separately charged in different counts of an indictment or information, if the crimes involve different elements, a conviction on any of the counts could not be invoked to demonstrate a claim of double jeopardy with respect to any of the other counts. In such a situation verdicts of guilty as to one count and not guilty as to any other as a matter of law are not inconsistent. There cannot be error under Lessard's theory if the verdicts are consistent.

This rule is sound and can be applied to justify the result of other cases in our jurisdiction in which this issue has been touched upon. See *Mainville v. State,* Wyo., 607 P.2d 339 (1980); *Padilla v. State,* Wyo., 601 P.2d 189 (1979); and *Hahn v. State,* 78 Wyo. 258, 322 P.2d 896 (1958). The essence of the rule has been invoked by other courts which have dealt with such issues in cases involving charges of multiple sexual assaults. *State v. Flynn,* 109 Ariz. 545, 514 P.2d 466 (1973); *State v. Fairfax,* 42 Wash.2d 777, 258 P.2d 1212 (1953).

The rule represented by *State v. Hickenbottom,* supra, is valid for yet another reason. It prevents any speculation concerning the deliberations of a jury in a criminal case. Lessard's contention requires speculation concerning the deliberations of the jury. We are compelled to eschew any invitation extended by Lessard's claim of jury conjecture or compromise to make our own speculations with respect to the product of a jury verdict and the deliberations which led to it. Rule 606, W.R.E., addresses this subject as follows:

"(b) *Inquiry into validity of verdict or indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, * * *."

Wisdom dictates that, having articulated a policy which forecloses proof of the process of jury deliberation, we do not then arrive at appellate decisions based upon our assumptions with respect to matters which our policy clearly says are not susceptible to proof.

The second complaint that Lessard makes is that the trial court erred in permitting an expert witness, a rape crisis counselor, to testify that the victim's behavior was consistent with a sexual assault. This witness first testified about her training and experience, and defense counsel then requested a bench conference to discuss the proposed testimony. The trial judge made it clear that he was not going to permit any testimony about a profile of rapists. He did rule, in effect, that the witness could testify with respect to her interview of the victim and her explanation of why the victim made certain statements such as "Don't tell anybody." Following the bench conference defense counsel objected on the ground that the expert's testimony was not relevant and any proba-

tive value would be outweighed by the prejudicial effect. This objection was overruled by the trial court. The essential testimony then continued as follows:

"PROSECUTOR: Hypothetically, given a sexual assault, is it common or uncommon for the victim to ask the assailant not to say anything about what has happened?

"EXPERT: It's very common on a threat of death because the person can be identified. The victim can identify the person who has assaulted her and she must protect herself, and in this case, her child and she would say anything, and it's very, very common.

"PROSECUTOR: Has that commonality been shown through instances in other cases?

"EXPERT: I would say the majority. * * *"

In this court Lessard argues that in effect this witness vouched for the truthfulness of the victim which is an invasion of the province of the jury. The State of Wyoming contends that this issue should not be addressed because it was not presented on that basis to the trial court.

If this witness testified to the truthfulness of the victim, contrary to this court's holding in *Smith v. State*, Wyo., 564 P.2d 1194 (1977), this court could address the question under the doctrine of plain error. *Wunder v. State*, Wyo., 705 P.2d 333 (1985); *Jahnke v. State*, Wyo., 692 P.2d 911 (1984). Lessard correctly points out that in *Smith v. State*, supra, this court held that an expert may not testify with respect to the truthfulness of the defendant because that testimony does invade the province of the jury. It is based upon the well-established principle that the question of credibility is for the trier of fact a question for the jury. The principle is applicable in this instance because the credibility of a victim of a claimed sexual assault is an issue for the jury. *Brown v. State*, Wyo., 581 P.2d 189 (1978).

Expert testimony now is addressed in Rule 702, W.R.E., which provides in pertinent part:

"If * * * specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert * * * may testify thereto in the form of an opinion or otherwise."

Rule 704, W.R.E., says:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

This court, in harmony with the language of Rule 702, W.R.E., has said that expert testimony is admissible if it is helpful to the trier of fact. *Buhrle v. State*, Wyo., 627 P.2d 1374 (1981); *McCabe v. R.A. Manning Construction Company, Inc.*, Wyo., 674 P.2d 699 (1983); *Reed v. Hunter*, Wyo., 663 P.2d 513 (1983).

■ The rule articulated in *Smith v. State*, supra, is based upon a principle that credibility is for the trier of fact. Testimony as to truthfulness would have to be otherwise admissible to make it subject to the implications of Rule 704, W.R.E. The assumption of the rule found in *Smith v. State*, however, is that the members of the jury are themselves expert with respect to the issue of credibility. Consequently, such testimony would not be of assistance to the jury in understanding the evidence or in determining a fact in issue in accordance with Rule 702, W.R.E. We conclude that the rule of *Smith v. State*, supra, survives the adoption of the Wyoming Rules of Evidence, and is still the law in Wyoming. See, e.g., *McArtor v. State*, Wyo., 699 P.2d 288 (1985); *Simmons v. State*, Wyo., 687 P.2d 255 (1984) (credibility is for the trier of fact).

■ Acceptance of this prong of Lessard's argument, however, does not change the result in this case. The expert in this instance testified that most rape victims at some point ask their assailant not to tell. The witness then gave her opinion of why victims usually do this. In the process the expert did not say that she believed or held any opinion with respect to the victim's version of the events surrounding the assault. She did not vouch for the truth of

the victim's testimony, and we will not so construe the opinion which she furnished. The trial court is afforded sound discretion in ruling on the admissibility of evidence, and our principle of jurisprudence is that the exercise of that discretion will not be set aside except upon a clear showing of abuse. *Amin v. State,* supra; *Munden v. State,* Wyo., 698 P.2d 621 (1985); *Towner v. State,* Wyo., 685 P.2d 45 (1984). In this instance the trial court did exclude a portion of the evidence which the expert was prepared to offer. In the exercise of his discretion, however, the trial judge permitted the expert witness to testify on the basis of her specialized knowledge in order to assist the jury to understand one aspect of the evidence. That was a matter which had troubled both the prosecutor and the defense counsel, i.e., why would a victim ask the assailant not to tell about the sexual encounter. The explanation given by the expert does not constitute testimony with respect to the veracity of the victim, and the appellant has made no other showing of an abuse of discretion in the admission of his testimony.

The judgment and sentence of the trial court is affirmed.