JOHN MICHAEL TOWNSEND, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 16645

March 31, 1987                                    734 P.2d 705

[Rehearing denied June 25, 1987]

*Conner & Steinheimer,* Reno, for Appellant.

*Brian McKay,* Attorney General, *William E. Cooper,* Deputy,
and *David Sarnowski,* Deputy, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Townsend was charged and convicted of two counts of lewdness with a minor under the age of fourteen years and two counts of sexual assault. He was sentenced to serve two concurrent ten-year terms for the lewdness counts and two concurrent life terms for the counts of sexual assault. The sentences imposed for sexual assault were to run consecutively to the sentences imposed for lewdness.

The victim was nine years old at the time the offenses occurred. She lived in a trailer house occupied by her family, including her father, appellant John Michael Townsend. The first

act occurred in the middle of September, 1984. The victim was watching television in her room; Townsend entered with an anatomy book and asked her if she wanted to learn about the "facts of life." Thereafter, Townsend proceeded to masturbate in front of the child to the point of ejaculation. Later, Townsend invited the victim to take a bath with him. Afterwards, Townsend dressed the child in adult clothing and makeup.

The second incident occurred two weeks later. The victim was asleep alone in her bedroom. Townsend entered her room and woke her up. While the child was changing into an adult's nightgown provided by Townsend, appellant went into the bath-room and returned with a tube of "lubricant." Townsend slipped his hands down the vee neck of the nightgown and massaged the victim's nipples. Shortly thereafter, he placed some lubricant on his finger, placed his hand inside the victim's underpants and "poked down" on the labial folds of her vagina. Townsend removed his hand, put more "lubricant" on his little finger and then inserted it into the child's vagina until she began to cry because of the pain. Townsend then removed his finger and showed the victim how far he had forced his finger into her. He then cautioned her to keep what had happened a secret. The child-victim told her mother the "secret" during the early part of November, 1984 as she and her mother were watching a movie on television entitled "How to Teach Your Children About Sex." Townsend was arrested soon thereafter.

Townsend directs us to five assignments of error on appeal.

### 1. *Prejudicial Voir Dire*

Townsend contends that the trial court erred in rejecting his motion for a mistrial after the prosecutor questioned a prospective juror about the ability of a trained person to identify mental scars that may result from sexual assault. We disagree. The State sought to determine the attitude of the venireman concerning expert testimony; the attempt did not rise to the level of an emotional appeal. It was acceptable voir dire to explore possible areas of bias in critical aspects of the State's case. Moreover, a trial court is accorded broad discretion in the latitude afforded counsel during voir dire, Spillers v. State, 84 Nev. 23, 436 P.2d 18 (1968). There was no abuse of discretion by the trial court on this issue.

### 2. *The Testimony of the State's Expert Witness*

Townsend next argues that no expert witness should be allowed to testify as to whether a complaining witness, in this case

Townsend's daughter, is telling the truth, or whether a crime has been committed.[1] Here, the State's expert testified that the child was a victim of post-trauma stress disorder as a result of a sexual assault by her father. Additionally, the expert testified, in effect, that the child's testimony was true.

Although limitations attributable to age may impair the capacity of a child-victim to articulate details indicative of a defendant's guilt, and thereby enhance the need for expert testimony, such testimony nevertheless must be in conformity with criteria specified by Nevada's evidence code. The threshold test for the admissibility of testimony by a qualified expert is whether the expert's specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. The goal, of course, is to provide the trier of fact a resource for ascertaining truth in relevant areas outside the ken of ordinary laity. Moreover, expert testimony must also withstand the challenge to all

---

[1]The pertinent trial testimony proceeds as follows:

Q. As a result of working with Sheila, what was your diagnosis of her?
A. Post-traumatic stress disorder as a result of sexual abuse.
Q. Now, I am sure this jury is like I am, do not understand the post-traumatic stress disorder [sic].
A. Very simply stated, it is a disorder which is a function of being exposed to a traumatic or series of traumatic series of incidents.
Q. What are the characterizations of that disorder that you observed in Sheila?
A. Okay. In Sheila the observation of the anxiety, the fearfulness that was going to be the outcome. She's talked about the fearfulness of other kids hearing about what happened and how they are going to react to her. There are episodes when things—one of the things you see in post-trauma, there could be brushes with violence which are precipitated with minimal precipitation. There were also indications of that.
Q. Is this post-trauma stress disorder something that you have observed in other children in the hundred and twenty some cases that you worked on other children that have been sexually assaulted as Sheila had?
A. Yes, that is.
Q. Based upon that, did you form a conclusion as to whether or not she had been sexually assaulted by her father?
A. Yes, I did.
Q. What is that conclusion?
A. My conclusion was that she had.
Q. After utilizing the techniques that you did with Sheila and prior to formulating this conclusion, did you form another conclusion as to her truthfulness?
A. Yes, I did.
Q. What were the factors that went into you forming an opinion of whether or not she was being truthful?
A. There were several. . . . [Lippert then went on to testify to the factors that she found present in Sheila which caused her to determine that she had post-traumatic stress disorder brought upon by sexual abuse.]

relevant evidence, i.e., whether probative value exceeds prejudicial effect. NRS 48.035(1).

In the instant case, it is apparent that expert testimony concerning post-traumatic stress disorder patterns in sexually abused children satisfied the requirement of the evidence code in providing jury enlightenment on a critical and relevant subject of an esoteric nature. Similarly, it was proper for the State's expert to express an opinion on the issue of whether the child had, in fact, been sexually assaulted or abused. Such an opinion, although embracing an ultimate issue, represents both the peculiar expertise and consummate purpose of an expert's analysis. In both instances, the testimony was highly probative in this type of secretive crime where ordinarily the only percipient witness is the child-victim; the prospect of unfair prejudice thus paled in comparison.

Other jurisdictions have also held expert testimony admissible on the issue of whether a child-victim has been sexually abused and whether the victim has reacted in ways that are consistent with the behavior of other sexually abused children. *See, e.g.,* State v. Myers, 359 N.W.2d 604 (Minn. 1984); State v. Middleton, 657 P.2d 1215 (Or. 1983).

Our ruling on the admissibility of expert testimony in child sex abuse cases does not dispose of the issue before us. Here, the expert not only opined that the child had been sexually assaulted, but proceeded to identify Townsend as the perpetrator. This was improper testimony as it transcended the test of jury enlightenment and entered the realm of fact-finding that was well within the capacity of a lay jury. While it may have been appropriate for the expert to provide clinical testimony concerning familial sex abuse in general, it was improper to identify the victim's father as the specific source of the assault. In many cases, such testimony would mandate reversal; however, the instant case requires no such result since the error is harmless beyond a reasonable doubt. Pasgove v. State, 98 Nev. 434, 651 P.2d 100 (1982); Sanders v. State, 96 Nev. 341, 609 P.2d 324 (1980). The evidence against Townsend, including his confession of guilt to the arresting officer, was overwhelming.

As noted above, Townsend also claims error in permitting the State's expert to validate the truthfulness of the victim's testimony. There is a measure of validity in Townsend's position. First, however, it is essential to recognize that expert testimony, by its very nature, often tends to confirm or refute the truthfulness of another witness, State v. Myers, 359 N.W.2d at 609. It is,

therefore, appropriate for qualified experts to characterize their findings, observations and conclusions within the framework of their field of expertise, irrespective of the corroborative or refutative effect it may have on the testimony of a complaining witness. However, it is generally inappropriate for either a prosecution or defense expert to directly characterize a putative victim's testimony as being truthful or false. *Id.* at 611. Here, the prosecutor asked the State's expert if she had formed a conclusion as to the victim's truthfulness. After responding affirmatively, the expert detailed her reasons for the conclusion she reached *without ever indicating what her conclusion was*. However, the question and the expert's response left no doubt as to her answer. This was improper since it invaded the prerogative of the jury to make unassisted factual determinations where expert testimony is unnecessary. The jury was certainly equipped to weigh and sift the evidence and reach its own conclusion concerning the child's veracity. Although the admissibility of expert testimony is a matter for the sound discretion of the trial judge, State v. Smith, 100 Nev. 570, 572, 688 P.2d 326, 327 (1984), both the prosecutor's question, and hence, the detailed response, should have been excluded.[2] Again, however, we conclude that in the face of overwhelming evidence of guilt, the error was harmless beyond a reasonable doubt and reversal is not warranted.

### 3. *The Inflammatory Hypothetical*

Townsend argues that the use of a hypothetical question, directed to the State's expert, introduced facts into evidence which were never proved by the State and that this constituted prosecutorial misconduct amounting to prejudicial error.

We disagree with Townsend on three grounds. First, the hypothetical by the State was substantially invited by Townsend's counsel in resorting to similarly objectionable hypothetical lines of questioning. Second, the lower court cautioned the jury, during the hypotheticals of both attorneys and subsequent to their completion, that counsel's comments were hypotheticals and that the jury should look only to the answers for guidance and not to the hypotheticals themselves. Finally, at the time the State's hypothetical was given, the attorney for Townsend did not object

---

[2]Although defense counsel failed to object to the prosecutor's question and the expert's response, we have elected to consider the point properly preserved on appeal since there were detailed objections by the defense when the expert's testimony was first tested via an offer of proof. We caution counsel, however, that the better and safer course is to renew in specific detail objections contemporaneous with trial events.

to the hypothetical as offered, only that it called for a legal conclusion. It is clear that Townsend cannot object to the content of the State's hypothetical for the first time on appeal. Porter v. State, 94 Nev. 142, 149, 576 P.2d 275, 279 (1978). This issue is without merit.

### 4. *Comment by the Prosecutor on Townsend's Election to Remain Silent*

In reviewing the record, we are not persuaded that the prosecutor improperly commented on Townsend's invocation of his *Miranda* rights. However, even if such an infraction had occurred, it would have been harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967).

### 5. *Multiple Counts Charged Against Townsend*

In reviewing the record, it appears that Townsend's convictions were based upon the following actions. First, Townsend was convicted of lewdness with a child under the age of fourteen years, this conviction stemming from Townsend masturbating in front of the child and encouraging her to participate in that exercise. Then, two weeks later, Townsend fondled and stimulated the child's breasts. This was the basis for the second conviction of lewdness with a child under the age of fourteen. The third conviction, this time for sexual assault, consisted of rubbing lubricant over, in and around the victim's vaginal opening (labial folds). The fourth conviction against Townsend was also for sexual assault and consisted of the penetration of the child's vagina by Townsend's little finger. Townsend argues that the second set of acts, the fondling of the breasts, the spreading of the lubricant and the digital penetration, should be merged into a single, punishable incident. He concludes, therefore, that his convictions should be limited to one act of lewdness with a child under fourteen years of age, the initial masturbation, and a single act of sexual assault for the fondling, lubrication and digital penetration.

It must first be noted that this court has determined that the crimes of lewdness with a child under the age of fourteen and sexual assault are mutually exclusive. Martin v. Sheriff, 88 Nev. 303, 496 P.2d 754 (1972). Likewise, it is clear that lewdness with a child under the age of fourteen cannot be deemed an included offense of the crime of sexual assault. The express language of the lewdness statute precludes this. *See* NRS 201.230. The State argues that the ruling of the lower court is consistent with Wicker v. State, 95 Nev. 804, 603 P.2d 265 (1974), and Deeds v. State,

97 Nev. 216, 626 P.2d 271 (1981), in which this court stated that separate and distinct acts of sexual assault committed as part of a single criminal encounter may be charged as separate counts, and convictions may be entered thereon.

It is clear that the first charge of lewdness should stand. Although less clear, we nevertheless conclude that the act of fondling the child's breasts was a separate act of lewdness, particularly in light of the fact that Townsend stopped that activity before proceeding further. We conclude, however, that two sexual assaults did not occur. Townsend simply began lubricating the victim's vaginal area, took his hand away, put more lubricating substance on his finger and then penetrated the child's vagina. Such a hypertechnical division of what was essentially a single act is not sustainable. The instant case is not analogous to *Wicker* or *Deeds*.

### Conclusion

We affirm the trial court's judgment with the exception of the first count of sexual assault, which is hereby vacated.[3]

---

[3]We note that appellant's present counsel of record did not represent appellant in the lower court.