John MONTOYA, Appellant (Defendant),

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 91–37.

Supreme Court of Wyoming.

Dec. 9, 1991.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Defender Aid Program, and Randall B. Reed, Student Intern for the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, Sr. Asst. Atty. Gen., and Michael K. Kelly, Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant John Montoya appeals from his conviction for taking immodest, immoral, or indecent liberties with a child in violation of Wyo.Stat. § 14–3–105 (1986).

We affirm.

Appellant raises the following issues:

I. Whether Dr. Brungardt's testimony that in her opinion [the victim] had been sexually molested is inadmissible expert testimony?

II. Whether testimony of [the foster mother, the social worker, and the undersheriff] is inadmissible hearsay?

On approximately June 9, 1990, the five-year-old victim was at home with her younger sister and her mother's live-in boyfriend, John Montoya. The victim's mother was outside taking a walk. Before the victim's mother returned from her walk, Appellant joined the victim and her sister on the couch, pulled down the victim's pants and panties, and touched her in the genital area.

The victim did not immediately tell her mother about the molestation because Appellant told her not to. The day after the molestation took place, the victim went on a family outing to Guernsey Reservoir. While they were at the reservoir, the victim's mother and Appellant's sister-in-law, Robin, were discussing a movie entitled "Unspeakable Acts," which dealt with sexual molestation. Robin and the victim's mother noticed the victim acting uncharacteristically nervous while they were discussing the movie. Robin, sensing something may have happened to the victim, went for a walk with her, whereupon the victim told Robin that Appellant had touched her in her "privates."

Robin and the victim's mother subsequently took the victim to the Department of Family Services where, in an interview with a social worker and Undersheriff Don Murphy, the victim repeated that Appellant had touched her. The victim's mother later voluntarily agreed to place her children into foster care.

At trial, the victim, using an anatomically correct doll, testified Appellant had

touched her in the genital area. Following the victim's testimony, Robin repeated how, during their visit to Guernsey Reservoir, the victim told her of the molestation. The prosecutor then called the victim's foster mother, the social worker, and the under-sheriff to testify. These three witnesses essentially repeated the victim's version of Appellant's conduct, but with slightly more detail. The final witness, Dr. Brungardt, testified that, in her opinion, the victim had been sexually abused.

Dr. Brungardt said that, when she was diagnosing the victim's condition, she considered a combination of the victim's history, conversations she had with her, and a complete medical examination of the victim. In examining the victim, Dr. Brungardt found the introitus, which is the entrance into the vaginal canal, was dilated. A normal child's introitus would be approximately three to four millimeters, about the size of a "Q-Tip," whereas the victim's introitus was dilated to five or six millimeters, or the size of a fingertip.

### Expert Testimony

Appellant first argues Dr. Brungardt should not have been allowed to testify that, in her opinion, the victim had been sexually abused. The colloquy at issue went as follows between the prosecutor and Dr. Brungardt:

Q. As to the condition that you observed relating [to] her hymen, what was [the victim] able to speak to you or say to you?

A. What she told me was that—and her exact words were my naughty dad, and that's what she said over and over consistently, had put his fingers, and pointed at her vaginal area, pointed at her vagina.

[Defense counsel made an objection which was overruled.]

Q. (BY [THE PROSECUTOR]) Were you able to make a diagnosis of her condition, of a medical problem, based

solely upon your observations of her physical being and her behaviors?

A. Yes. I came to an assessment that there was sexual molestation.

Appellant contends Dr. Brungardt's testimony expressed an opinion that the child was telling the truth and, thus, improperly invaded the province of the jury. Appellant also claims the doctor's testimony at issue here is similar to testimony found to be inadmissible in *Stephens v. State*, 774 P.2d 60 (Wyo.1989).

■ In considering Appellant's argument, we recognize that a trial court is afforded the discretion to rule on the admissibility of evidence and that the exercise of its discretion will be set aside only upon a clear showing of abuse. *Lessard v. State*, 719 P.2d 227 (Wyo.1986). The trial court did not abuse its discretion by allowing Dr. Brungardt's testimony.

■ We agree with Appellant that an expert witness may not vouch for the credibility or truthfulness of a victim. *Stephens*, 774 P.2d 60; *Zabel v. State*, 765 P.2d 357 (Wyo.1988). This holding is premised upon the requirement in W.R.E. 702[1] that expert testimony is admissible only if it will assist the trier of fact. Since the jury is already considered to be an expert in judging truthfulness, any expert testimony concerning the victim's truthfulness would be of no assistance, making the testimony inconsistent with W.R.E. 702. *Zabel*, 765 P.2d 357; *Lessard*, 719 P.2d 227.

■ Dr. Brungardt's testimony did not directly express an opinion on the victim's truthfulness and, therefore, did not usurp the jury's role of evaluating credibility. Dr. Brungardt merely concluded there had been sexual molestation. We realize that in many, if not most, instances an expert witness' testimony will incidentally bolster the truthfulness of another witness; however, this incidental effect does not, by itself, render the testimony inadmissible.

1. W.R.E. 702 provides:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Zabel,* 765 P.2d 357; *Griego v. State,* 761 P.2d 973 (Wyo.1988).

We also reject Appellant's claim that the testimony in the present case was similar to the testimony found to be inadmissible in *Stephens.* The difference is that in *Stephens* the trial court not only allowed an expert witness to testify there was sexual abuse but also allowed the expert to testify as to the victim's credibility and the defendant's guilt. The following dialogue between the prosecution and a psychotherapist took place:

> [Q.] "Based upon your experience and training and your evaluation of [the victim], do you have an opinion about young [the victim]."
>
> [A.] "It is my opinion that this child has been sexually abused by an adult."
>
> [Q.] "Do you have an opinion about who this contact has been with?"
>
> [A.] "He shares with me that it was daddy Bill."
>
> [Q.] "Do you believe [the victim]?"
>
> [A.] "Yes."

*Stephens,* 774 P.2d at 66. We held the expert could not vouch for the truthfulness of the victim and could not articulate an opinion as to the guilt of the accused. Here, Dr. Brungardt testified that the victim had been molested, not that she believed the victim or that she thought Appellant committed the molestation.

Although Dr. Brungardt did not comment on the credibility of the victim or the identity of the perpetrator, we must still decide whether she could express an opinion that the victim had, in fact, been sexually molested. In *Stephens,* we found an expert's opinion on the fact of sexual abuse must comply with W.R.E. 702 and 704.[2]

■ Applying these rules, we determine the threshold issue is whether the witness was a qualified expert. Dr. Brungardt's experience in dealing with child abuse consisted of pediatrics rotations, both as a student and as an intern; pediatrics update courses; and in-office examinations of eight to ten sexual molestation victims over a four-year period, plus an unknown number of examinations in the emergency room. The trial judge found this experience was sufficient to qualify Dr. Brungardt as an expert. Whether a witness qualifies as an expert rests largely with the trial court, and that court's determination will be overturned only when a clear abuse of discretion is shown. *Noetzelmann v. State,* 721 P.2d 579 (Wyo.1986). The trial court did not abuse its discretion in qualifying Dr. Brungardt as an expert.

■ The expert must also have objective scientific or specialized knowledge which would assist the trier of fact.[3] Because the question of whether a child has been molested is generally beyond common experience, allowing an expert to testify on the issue assists the trier of fact. *State v. Hester,* 114 Idaho 688, 760 P.2d 27 (1988). *See also Smith v. State,* 564 P.2d 1194 (Wyo.1977). A layman observing the same medical evidence as Dr. Brungardt observed would have difficulty knowing how to interpret the data. In *Townsend v. State,* 103 Nev. 113, 734 P.2d 705, 708 (1987), the Nevada Supreme Court found it was appropriate for an expert to testify on the issue of whether a child had been sexually abused:

> [I]t was proper for the State's expert to express an opinion on the issue of whether the child had, in fact, been sexually assaulted or abused. Such an opinion, although embracing an ultimate issue, represents both the peculiar expertise and consummate purpose of an expert's analysis.

---

**2.** *See supra* note 1 for text of W.R.E. 702. W.R.E. 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

**3.** W.R.E. 702 does not require the expert to base his or her opinion upon objective information. In *Stephens,* however, we said that an expert's opinion on the fact of sexual abuse must be on the basis of objective criteria rather than subjective impressions. Future cases may involve information which cannot be characterized as either objective or subjective; however, in this case, Dr. Brungardt had sufficient objective medical evidence upon which to base her opinion.

Because Dr. Brungardt was an expert and her opinion assisted the trier of fact, we hold her testimony was admissible pursuant to W.R.E. 702.

■ Dr. Brungardt's testimony was also not to be excluded merely because it embraced an ultimate issue. *Stephens,* 774 P.2d 60. W.R.E. 704 allows opinions to be given on ultimate factual issues.

■ Expert testimony which is admissible under W.R.E. 702 and 704 must still comply with W.R.E. 403's requirement that its probative value cannot be substantially outweighed by the danger of unfair prejudice. Appellant was not unfairly prejudiced. Dr. Brungardt's testimony was highly probative of a secretive crime in which the only witness was a five-year-old child. *See Townsend,* 734 P.2d 705. Defense counsel cross-examined Dr. Brungardt about the victim's dilated introitus, which was the primary basis for her opinion. Finally, the jury was instructed it was free to disregard Dr. Brungardt's opinion.

#### Prior Consistent Statements

Appellant's second contention is that the trial court erred in admitting the testimony of the foster mother, the social worker, and the undersheriff as prior consistent statements pursuant to W.R.E. 801(d)(1)(B), which states:

> (d) *Statements which are not hearsay.*—A statement is not hearsay if:
>
> (1) Prior Statement by Witness.— The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive ...[.]

This Court has previously found W.R.E. 801(d)(1)(B) contains two express conditions for establishing the admissibility of prior consistent statements: "1) The prior statement must be 'consistent with [the witness'] testimony'; and 2) there must be an 'express or implied charge ... of recent fabrication or improper influence or motive.'" *Makinen v. State,* 737 P.2d 345,

349 (Wyo.1987). *See also Lacey v. State,* 803 P.2d 1364 (Wyo.1990), and *Baum v. State,* 745 P.2d 877 (Wyo.1987).

■ W.R.E. 801(d)(1)(B) does not require that the prior consistent statement be made before the alleged improper influence arises. In *Stephens,* 774 P.2d at 71, we explained that a prior consistent statement can be used as affirmative evidence if the alleged improper influence antedates the statement. If the prior consistent statement does not precede the alleged improper influence, the statement may be used only for rehabilitation. *Id.* We also said that, if the trial court finds the improper influence antedated the consistent statement and yet it still determines the probative value justifies admission, a limiting instruction must be given, if requested, charging the statement may be used only for evaluating credibility and not as affirmative evidence. *Id.*

In this case, defense counsel made an express charge of improper influence by implying in the victim's cross-examination that her claim was fabricated by Robin. According to Appellant, the improper influence arose when Robin first discussed the molestation with the victim at Guernsey Reservoir. This would mean the alleged influence arose before the victim's statements to the foster mother, the social worker, and the undersheriff. According to our analysis in *Stephens,* the victim's prior consistent statements could be used only for rehabilitation.

Appellant agrees the statements may be used for rehabilitation, although he contends the trial judge was required to instruct the jury that the statements could be used only for evaluating credibility and not as affirmative evidence. In *Stephens,* however, we said such a limiting instruction would be required only if it were requested. *See also Sybert v. State,* 724 P.2d 463 (Wyo.1986).

■ Defense counsel did not request a limiting instruction. In chambers, the judge, in referring to the charge that Robin had influenced the victim to fabricate her story, said, "Yes. I think [the prosecutor]

can rehabilitate her on that issue." Defense counsel responded, "Right. And that I would concede, not the idea that this can be a vehicle to establish facts that he hasn't been able to establish through his victim." Defense counsel's comment did not constitute a request for a limiting instruction. Absent such a request, we hold the trial court did not err by failing to instruct the jury.

Appellant also claims the statements of the foster mother, the social worker, and the undersheriff were inconsistent with the victim's statements and, thus, were inadmissible under W.R.E. 801(d)(1)(B). At trial, when the victim was asked whether she had been hurt, she responded in the affirmative, and, when she was asked where she was hurt, she replied, "Somewhere that [Appellant is] not to touch me." When the victim was asked what part of her Appellant was not supposed to touch, she indicated the genital area on an anatomically correct doll.

First, Appellant argues it was inconsistent for the foster mother to testify the victim said Appellant put two fingers inside of her. When she was testifying, the victim said nothing about penetration. Second, the social worker testified that, when the victim was given an anatomically correct doll, she "lifted up the dress and pulled down the panties and she demonstrated with her hand what had been happening to her, the rubbing, touching between her legs and on her vagina." When the victim was given an anatomically correct doll at trial, she did none of these things. Finally, Undersheriff Murphy testified that, in his interview with the victim, she said a Bugs Bunny cartoon was showing on television at the time the molestation occurred. In the victim's testimony, she never mentioned watching television.

Appellant is correct in his assertion that W.R.E. 801(d)(1)(B) requires prior statements to be consistent with the witness' testimony in chief. A failure to require consistency would invite the dangers sought to be restrained by the hearsay rule. *Kelley v. State*, 486 So.2d 578 (Fla.), *cert. denied*, 479 U.S. 871, 107 S.Ct.

244, 93 L.Ed.2d 169 (1986). However, the inconsistencies complained about here were minor and not critical to proving the charge of indecent liberties. Furthermore, any error in admitting the prior consistent statements is harmless, given the fact the foster mother's, the social worker's, and the undersheriff's testimony was merely cumulative of testimony previously given by the victim and Robin.

Affirmed.

URBIGKIT, Chief Justice, concurring.

I concur. The record demonstrates that the contact between Dr. Brungardt and the five-year-old child was actually for the physician to provide medical diagnosis and treatment, *R.S. v. Knighton*, 125 N.J. 79, 592 A.2d 1157 (1991), and not artificially arranged to create admissible hearsay evidence during investigative activities. The hearsay exception, W.R.E. 803(4), specifically allows statements relevant to diagnosis or treatment. *Stephens v. State*, 774 P.2d 60 (Wyo.1989); Annotation, *Admissibility of Statements Made for Purposes of Medical Diagnosis or Treatment as Hearsay Exception Under Rule 803(4) of the Federal Rules of Evidence*, 55 A.L.R.Fed. 689 (1981). The distinction between a treating or testifying physician cannot be entirely ignored. *See Brown v. Com.*, 812 S.W.2d 502 (Ky.1991). *Cf. Drumm v. Com.*, 783 S.W.2d 380 (Ky.1990). At the very least, we need to apply the "less inherent reliability" rule. *Morgan v. Foretich*, 846 F.2d 941, 952 (4th Cir.1988), Powell, A.J., concurring in part and dissenting in part; *Drumm*, 783 S.W.2d at 385.

However, I am far less comfortable with a further expansion of conviction by nonhearsay hearsay evidence which permits the additional testimony of the foster mother, the social worker, and then additionally the undersheriff. Realistically, their testimony was presented under W.R.E. 801(d)(1)(B) to bolster the testimony of the victim. This means the more people the victim can be arranged to talk to, the more evidence that can thereby be created. There should be a limit to this process. *United States v. Mock*, 640 F.2d 629 (5th

Cir.1981). Similarly, see *McGowan v. Cooper Industries, Inc.*, 863 F.2d 1266 (6th Cir.1988). We reach the stage described by 4 Wigmore, Evidence § 1124 (Chadbourn rev.1972) (emphasis added):

> When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, *even if it is an improbable or untrustworthy story,* it is not made more probable or more trustworthy by any number of repetitions of it.

The limitation governed by W.R.E. 403, "needless presentation of cumulative evidence," should not disappear when recitation of what another witness has said is presented under the umbrella of W.R.E. 801(d)(1)(B). "Like most kinds of evidence, prior consistent statements offered under Rule 801(d)(1)(B) are excludable pursuant to Rule 403 where probative worth seems substantially outweighed by dangers of prejudice or confusion, or by considerations of avoiding delay or waste of time." 4 D. Louisell & C. Mueller, Federal Evidence § 420 (1991 Supp.).

I concur in this decision because of the clarity of the victim's testimony which was not realistically contradicted by any expressed or implied charge of recent fabrication or improper influence. The testimony of the sister-in-law and the doctor was likewise clear and convincing. Consequently, I agree with the majority that the additional testimony was, at worst, "merely cumulative."