760 P.2d 27

**STATE of Idaho, Plaintiff–Respondent,**

v.

**George Roy HESTER,
Defendant–Appellant.**

No. 16788.

Supreme Court of Idaho.

July 21, 1988.

Lynn, Scott & Hackney, Boise, for defendant-appellant. Gar Hackney argued.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., (argued), Boise, for plaintiff-respondent.

BAKES, Justice.

Defendant George Roy Hester, Jr. (Hester) appeals his conviction and the district court's order withholding judgment and order of probation entered after the jury returned a verdict finding Hester guilty of lewd conduct with a child under sixteen, the victim being his two and one-half year old son, Brian. We reverse and remand for a new trial.

## I

Hester and his wife, Cathy, were divorced on November 5, 1985. Cathy was given custody of the children, but Hester was given rights to visit his two children, Brian and newly-born Curtis.

This action centers primarily around three events occurring in January and February, 1986. The first event occurred in January, 1986. His ex-wife, Cathy, testified:

"A. Brian was at my aunt's house and he was going to the bathroom. And he leaned over and put his finger up his bottom. And I said: Brian, don't do that. And he started crying that, Daddy does it. I want my daddy. I want my daddy.

"Q. [By the prosecution] Has he ever done that before?

"A. No, he hasn't."

Cathy took Brian to Health and Welfare and was "slightly" reassured that no sexual abuse had occurred. Brian continued to see Hester.

The second event occurred on Thursday, February 6, 1986. After spending Wednesday night with Hester, Brian had returned and was lying on his tummy taking a bath. Cathy testified:

"A. I was giving Brian his bath, and it was in the evening after I came home from work. And he was laying on his tummy in the tub pretending like he was swimming. And there was a very red mark in the crack of his bottom. When I asked him what it was, he said: Daddy squished me.

"Q. [By the prosecution] And what did you say?

"A. I said, What does that mean, Brian? And he said, Daddy and I have pee-pee secrets, Mommy. And I said, That sounds bad, Brian. And he pulled back when I said that sounds bad. And then he looked at me and said, They're balloon secrets, then, Mommy. Balloon secrets are good. You blow it up and you pop it.

"Q. And what was he pointing to?

"A. He was pointing to his penis."

The following day Cathy took Brian to Dr. Jambura, Brian's pediatrician. Dr. Jambura's examination of Brian's rectal area revealed nothing unusual. Dr. Jambura testified that because the rectum has one of the best blood supplies of any part of the body it has unusual healing powers.

Cathy began discreetly checking Brian immediately after he returned from visits with Hester. The third event which formed the basis for this action occurred on Sunday, February 23, 1986. Hester had picked Brian up for a weekend visit on the prior Friday, February 21, at approximately 4:00 p.m., and then had returned Brian to Cathy's custody at approximately 4:00 p.m. on Sunday. Upon performing her check, Cathy observed another red mark on Brian's bottom. Cathy called Dr. Jambura and arranged for an immediate visit. At approximately 5:30 p.m. Dr. Jambura examined Brian. Dr. Jambura testified:

"Q. [By the prosecution] What did you observe when you saw the child?

"A. When I examined Brian at that point, a two-centimeter cuff of redness, swelling and tenderness was noted around the anus. And there was a good deal of increased tone to the examining finger when a rectal exam was done.

"Q. What do you mean by the increased tone?

"A. The grasping force of the anus when the rectal exam was done was firmer and more acute than on the previous examination.

"Q. And what does that indicate to you?

"A. Put together, these findings indicate that trauma had occurred to the perianal area.

. . . .

"Q. Okay. Now in terms of this particular injury on the 23rd, can you indicate whether that was something that you would naturally expect to see in a child of this age?

"A. I would not.

. . . .

"Q. And based on your observations of the wound at that time, what would be

the diameter of the object [that injured Brian's anus]? ....

"A. We're talking about something in the range of a broomstick.

"Q. Now how do you know that this was something going from the outside in? ....

"A. ... If it's an inside-out injury, one will initially obtain very little resistance to examination. Then as one further examines the rectum, one will find more resistance and more increased tone internally than externally.

"Q. And is that what you found?

"A. That is not what I found. I found more resistance externally than internally.

"Q. And that would indicate to you what?

"A. That non-accidental trauma had occurred.

"Q. And what do you mean by 'non-accidental trauma'?

"A. I mean that the child—some purposeful trauma was made to the child's anus, i.e., sexual abuse.

. . . .

"Q. In terms of this particular injury that you saw, can you give an estimate of the time that it was there?

"A. I would estimate that the age of the injury that I saw in the perianal area on the 23rd of February was 24 to 48 hours.

"Q. And would you say that it—or what would the outside limit be? Would that be the 48 hours?

"A. Forty-eight hours would be the outside limit.

. . . .

"Q. In your opinion, Doctor, is it possible that this injury could have been anything other than a deliberate penetration?

"A. I find it very difficult to believe that it was anything but a deliberate penetration."

Following Dr. Jambura's diagnosis, Brian was taken to Victoria McGee, a clinical social worker. McGee specializes in helping sexually abused children, their offenders, and non-offending spouses. McGee had been asked by the prosecution to determine whether she felt Brian had been sexually abused. In her evaluation of Brian, McGee employed anatomically correct dolls, teddy bears, pencil drawings and chalkboard drawings. The court found McGee to be qualified as an expert, and allowed her to testify as follows:

"A. ... He [Brian] asked for the teddy bear. The dolls were sitting in a chair, the teddy bears were sitting in a chair, and Brian asked for the big teddy bear.

"And he picked up the big teddy bear which was about the size of Brian and said, here's the pooper. And he grabbed in between the big teddy bear's leg. And there wasn't anything there with the teddy bear. And the pooper goes here, and he took the tiniest teddy bear, which looks a little bit like a koala bear, and he put the teddy bear with the pooper on top of the smaller teddy bear.

"Q. [By the prosecution.] Face-to-face or face-to-back?

"A. Face-to-back. Okay. And I said, What are these teddy bears doing? And he said, Oh, doing pooping. ....

"There were other—okay. Brian, we played some more with the teddy bears, and he talked constantly of the pooper and identified it as the front of the teddy bear. And then when he decided the dolls were going to be fun, he undressed the largest male doll, which is anatomically correct and does have a penis, and he said, Pooper. This was the—so this was the second time he's identified the same body place. And then he undressed all the other three dolls, which is—I have like an adult female anatomically correct doll, a little girl doll and a boy doll. And he did the same thing with the male, the adult male and he said, Pooper. And I said, what does this pooper do? And he did the same thing with the small male doll as he had done with the large and small teddy bear.

"... He ran around the room and he came back and we sat down. And he said, Pooper, and, Ow-ee. And I couldn't get a complete sentence out of him, but he associated that. And he continued to

like to demonstrate to me this penis going into the anatomically correct small boy's rectal area. ...

....

"A. ... I need to describe one more incident, so that then when I pulled all of my information together and formed an opinion—we drew on the blackboard. He liked to draw on the blackboard. I said, Let's draw Brian's family. Well, everybody in Brian's family he drew, mom and dad and baby brother and Brian. But he put a pooper on all of them that looked exactly like a penis on every figure.

"And then he said, No, no, no. And then with—colored over them with chalk, the pooper part that he identified. And he just said, No, no, no, ow-ee. And I said —I made a statement rather than asking a question: It sounds like a pooper can hurt Brian. He said, Yes. And then he withdrew. He had been, at that point had been laughing with me and talking. And at that point he withdrew and I got no more verbal information from Brian. I did not push, either.

"Q. Did you get—you said that you did not get any more verbal information. Did you get some non-verbal information after that?

"A. Right. He withdrew from me physically, because we were close together in real close proximity, and went to the corner of the room that he and I were in. Kind of sat down—didn't kind of, he did sit down in the corner and basically just sat there. And I tried to engage him in conversation, trying to identify a feeling. Brian's feeling sad? Brian's feeling happy? I got no more response from Brian.

"And at that point, I ended my interview. ...

....

"A. Based on my experience of children who have not been sexually abused versus children who have been sexually abused in my practice, I am saying that Brian had been sexually abused.

"Q. Now during the time that you were with Brian, were you able to determine the identity of the perpetrator?

....

"A. No, I was not. The objective of the interview was to determine if Brian had been sexually abused. And in my opinion, he had been."

Based on these incidents involving Brian, Hester was charged with violating I.C. § 18–1508, lewd conduct with minor or child under sixteen.[1] Prior to trial, Hester filed a motion *in limine* requesting an order prohibiting the state from introducing the testimony of Brian and limiting the testimony of the state's expert witnesses.[2] After a hearing on the motion, the court postponed its ruling. The motion was renewed in part after jury selection, but prior to the state presenting its case. The state informed the court then that Brian would not be testifying, but that the state planned to have Brian's mother, Cathy, testify regarding statements Brian had made to her. The court again delayed ruling on the motion.

During the trial the court examined Brian, now three years old, in chambers. The court ruled that Brian did have the capacity to tell the truth, but that he did not have the capacity to be a witness, stating, "I really question his memory."

The court later ruled that certain statements made by Brian to his mother were admissible under I.C. § 19–3024, the child

1. "**18–1508. Lewd conduct with minor or child under sixteen.**—Any person who shall wilfully and lewdly commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor or child under the age of sixteen (16) years, including but not limited to, genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact, whether between persons of the same or opposite sex, or who shall involve a minor or child in any acts of bestiality or sado-masochistic abuse or lewd exhibition as any of such acts are defined in section 18–1507, Idaho Code, when any of such acts are done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such minor or child, shall be guilty of a felony and shall be imprisoned ·in the state prison for a term of not more than life."

2. See Appendix A, motion *in limine.*

hearsay exception,[3] and I.R.E. 803(24).[4] The court specifically found that each element of these two hearsay exceptions was met. Brian's mother was then permitted to testify regarding Brian's actions and the statements he made to her, as set out at page 689, 760 P.2d at page 28 above.

In addition to the testimony quoted above, the state presented its case through the additional testimony of (1) D. Whitman Jones, Ph.D, a clinical psychologist who did psychological evaluations of Brian, Cathy, and the defendant Hester, and (2) Carol Sorini, a child and family psychotherapist who counseled Brian as a result of the sexual abuse. These experts, too, testified regarding various aspects of the case, including their contacts with Brian, their opinion that Brian had been sexually abused, their opinion as to the identity of the abuser, and the basis for reaching their opinions.

A jury ultimately found Hester guilty of lewd conduct with a child under sixteen. Hester appeals his conviction and the district court's order withholding judgment and order of probation. Because we conclude that certain testimony was erroneously admitted, we reverse and remand for a new trial.

## II

### A.

■ Appellant raises numerous issues on appeal. The dispositive issue, however, involves the admission of expert opinion evidence. This issue, in turn, involves several sub-issues. First, did the trial court properly admit expert opinion testimony that Brian had been abused? We hold that it did. Under I.R.E. 702[5] an expert can render an opinion that a child has been sexually abused if he is qualified by knowledge, skill, experience, training, or education. In the instant case, the trial judge found each expert to be qualified in the field of child sexual abuse. This finding has not been challenged on appeal. Accordingly, once a proper foundation had been laid, it was not error for these experts to render their opin-

---

3. "19–3024. Statements by child.—Statements made by a child under the age of ten (10) years describing any act of sexual abuse, physical abuse, or other criminal conduct committed with or upon the child, although not otherwise admissible by statute or court rule, are admissible in evidence after a proper foundation has been laid in accordance with the Idaho rules of evidence in any proceedings under the child protective act, chapter 16, title 16, Idaho Code, or in any criminal proceedings in the courts of the state of Idaho if: "1. The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statements provide sufficient indicia of reliability; and
"2. The child either:
"(a) Testifies at the proceedings; or
"(b) Is unavailable as a witness. A child is unavailable as a witness when the child is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity. Provided, that when the child is unavailable as a witness, such statements may be admitted only if there is corroborative evidence of the act.
"Statements may not be admitted unless the proponent of the statements notifies the adverse party of his intention to offer the statements and the particulars of the statements sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statements."

4. "[I.R.E.] 803. Hearsay exceptions; availability of declarant immaterial.—The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
. . . .
"(24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant."

5. "Rule 702. Testimony by experts.—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

ions that Brian had been abused. Whether a child has been sexually abused is "beyond common experience"[6] and allowing an expert to testify on this issue will "assist" the trier of fact. *Stoddard v. Nelson,* 99 Idaho 293, 581 P.2d 339 (1978). Under I.R.E. 702, such expert opinion testimony is allowable and was properly allowed in the instant case.

A case squarely on point is *Townsend v. State,* 734 P.2d 705 (Nev.1987) *(per curiam ).* In *Townsend,* the victim was nine years old at the time the offenses occurred. She lived in a trailer house occupied by her family, including her father, Townsend. After various incidents occurred, Townsend was convicted of lewdness with a minor under the age of fourteen years and sexual assault. One of the issues raised by Townsend was whether an expert should be allowed to testify as to whether the child had, in fact, been sexually abused. The Supreme Court of Nevada expressly held such expert opinion testimony to be proper, stating:

"[I]t is apparent that expert testimony concerning post-traumatic stress disorder patterns in sexually abused children satisfied the requirement of the evidence code in providing jury enlightenment on a critical and relevant subject of an esoteric nature. *Similarly, it was proper for the State's expert to express an opinion on the issue of whether the child had, in fact, been sexually assaulted or abused. Such an opinion, although embracing an ultimate issue, represents both the peculiar expertise and consummate purpose of an expert's analysis.* ...

"Other jurisdictions have also held expert testimony admissible on the issue of whether a child-victim has been sexually abused and whether the victim has reacted in ways that are consistent with the behavior of other sexually abused children. See, e.g., *State v. Meyers,* 359 N.W.2d 604 (Minn.1984); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215

(1983)." 734 P.2d at 708 (emphasis added).

Another case on point is *Matter of Cheryl H.,* 153 Cal.App.3d 1098, 200 Cal.Rptr. 789 (1984). At the time the action in *Cheryl H.* was instituted, Cheryl was three years old. Her parents had separated earlier. The court appointed Dr. Gloria Powell, a qualified child abuse expert and psychiatrist, to conduct psychiatric evaluations of Cheryl and both parents.

At the hearing, Dr. Powell testified as a witness for Cheryl H.'s mother, Mr. H. testified on his own behalf, but Cheryl did not testify. Dr. Powell expressed her opinion that Cheryl had been sexually abused. The court had no difficulty concluding that the topic was a proper subject for expert opinion testimony because the expert's opinion was "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact ...," citing California's evidence code. Furthermore, the opinion itself was based on proper and sufficient "matter" because it was based on the expert's special knowledge, skill, experience, training and education. *Cf.* I.R.E. 702. Because of her expertise, Dr. Powell was able to draw inferences which were "beyond common experience." A non-expert observing the same behavior would have difficulty interpreting the data without the assistance of an expert; thus, the court held, Dr. Powell's testimony was helpful and was therefore admissible. The California court's analysis and conclusion support our decision that the opinion of the expert witnesses, that Brian had been sexually abused, was admissible. *Accord State v. Bailey,* 89 N.C.App. 212, 365 S.E.2d 651 (1988) (expert opinion testimony that 9 year old complainant had been sexually abused was admissible where expert simply gave opinion based on examination of child and expert knowledge concerning abused children in general); *State v. Suarez,* 736 P.2d 1040 (Utah Ct.App.1987) (after a foundation was properly laid, testimony of expert witness opining that 12 year old victim had

---

**6.** "[T]ensions unique to the trauma experienced by a child sexually abused by a family member have remained largely unknown to the public."

*State v. Middleton,* 294 Or. 427, 657 P.2d 1215, 1222 (Or.1983) (Roberts, J., concurring).

been sexually abused was admissible). *See also State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73, 76 (1986) (*en banc*) ("[T]he expert's function is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror. [Citations omitted.] Certainly, the behavioral patterns of young victims of incest or child molestation fall into that category.").

## B.

■ The second sub-issue involves the trial court's admission of expert testimony regarding character traits of child abusers in general, and Hester's traits in particular. Jones testified that Hester exhibited character traits consistent with the characteristics of known child abusers. While recognizing that the admission of expert opinion testimony is within the trial judge's discretion, *State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980), and while further acknowledging that, absent an abuse of that discretion, the judge's decision will not be disturbed on appeal, *State v. Griffiths, supra; Stoddard v. Nelson*, 99 Idaho 293, 581 P.2d 339 (1978), we hold that the admission of this testimony, under the circumstances in this case, constituted reversible error.

If relevant, it is generally permissible for experts to testify regarding traits typically exhibited by child abusers. I.R.E. 401, 402. Likewise, evidence that Hester exhibits characteristics commonly found in child abusers would generally be admissible, if relevant. *Id.* In addition, both types of evidence are "beyond [the] common experience" of most jurors, and jurors would be "assisted" by such expert testimony. I.R.E. 702; *Stoddard v. Nelson*, 99 Idaho 293,

581 P.2d 339 (1978); *Matter of Cheryl H.*, 153 Cal.App.3d 1098, 200 Cal.Rptr. 789 (1984); *Townsend v. State*, 734 P.2d 705 (Nev.1987). However, I.R.E. 404 prohibits the admission of evidence of a person's character (even if in the form of an expert opinion) if offered during the prosecution's case in chief to prove the accused's conduct on a specified occasion.[7] The only reason for offering evidence that Hester exhibited character traits similar to those of known child abusers was to prove that he acted in conformance with those traits in this particular instance. It was not offered to rebut evidence "of a pertinent trait of his character offered by [the] accused," and thus does not meet the I.R.E. 404(a)(1) exception. Using evidence of a person's characteristics in the prosecution's case in chief simply to support the ultimate conclusion that he acted in conformance with those characteristics in committing a crime, is not permissible. Under that scenario, the evidence of a person's characteristics is no longer relevant, and none of the character evidence is admissible. In the absence of some other reason for the admission of this type of character evidence, besides that prohibited by I.R.E. 404(a)(1), evidence regarding the traits typically exhibited by child abusers is not admissible; neither is evidence that a particular defendant possesses those same characteristics admissible.

Again, the California case of *In the Matter of Cheryl H.*, 153 Cal.App.3d 1098, 200 Cal.Rptr. 789 (1984), is directly in point. In that case the doctor's opinion that Mr. H. exhibited characteristics typically found in child abusers rested in part on the results of Mr. H.'s standardized psy-

---

7. **"Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.**—(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

"(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

"(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait

of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

"(3) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608 and 609.

"(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

chological tests. Those results, when compared with results compiled from known child abusers, led to the conclusion that Mr. H. had a character trait—a propensity to sexually abuse children, and that he acted in conformance with that propensity by sexually abusing his daughter. Such an inference is prohibited by the rules of evidence. Paralleling the Idaho Rules of Evidence, California's evidence code reads, in pertinent part: "[E]vidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible if offered to prove his conduct on a specified occasion." The comments also explain that evidence about a person's propensity or disposition is inadmissible when offered in support of an "inference that he behaved in conformity with that [propensity or disposition] on a particular occasion." Cal.Evid.Code § 1101(a) (West 1966).

The studies previously performed, and tests administered to Hester and to Mr. H., are relevant only if employed as a basis for an inference that they behaved in conformity with a particular propensity or disposition on a particular occasion. This is merely an exotic variety of character evidence and is inadmissible under these circumstances. I.R.E. 404.

### C.

The final expert opinion testimony sub-issue involves the trial court's admission of Jones's and Sorini's expert opinion testimony that Hester was Brian's abuser. Although the field of child abuse may be "beyond common experience," having an expert render an opinion as to the identity of the abuser is more of an invasion of the jury's function rather than an "assist" to the trier of fact. I.R.E. 702. The real function of the testimony of Jones and Sorini was to convert hearsay declarations into admissible opinions, and to evaluate the circumstances and render the same conclusion which the jury was asked to render by its verdict. This was error, and the trial court erred in admitting such expert opin-

ion evidence. As the Nevada Supreme Court stated, in the *Townsend* case:

"Here, the expert not only opined that the child had been sexually assaulted, but proceeded to identify Townsend as the perpetrator. This was improper testimony as it *transcended the test of jury enlightenment and entered the realm of fact-finding* that was well within the capacity of a lay jury. While it may have been appropriate for the expert to provide clinical testimony concerning familial sex abuse in general, it was improper to identify the victim's father as the specific source of the assault." 734 P.2d at 708 (emphasis added).

Likewise, in *Cheryl H.* the California Court of Appeals stated:

"It should be remembered that to be a proper subject for expert opinion it is not enough an inference be 'beyond common experience.' The expert opinion must 'assist' the trier of fact. That is, the inference must be one which an expert of a certain type is herself entitled to make as a matter of logic, expertise and law. Where an expert in a given field is not better equipped than a lay person to make that particular inference or if neither an expert nor a lay person is allowed to make that inference then the trier of fact is not 'assisted' by hearing the expert's opinion and such testimony is inadmissible. 153 Cal.App.3d at 1118, 200 Cal.Rptr. at 801.

In accord is *State v. Jackson*, 239 Kan. 463, 721 P.2d 232 (1986). One of the issues in *Jackson* involved the testimony of two investigators, working in the field of child sexual abuse. Both witnesses had extensive specialized training and experience, and the trial court permitted both of them to testify as experts. In addition to testifying as to the interviews with the victim and statements made by her, each witness was permitted to testify, over objection, and before the jury, that in her opinion the victim was sexually abused by the defendant. It is this opinion testimony identifying the defendant as the perpetrator which the defendant contended constituted error.

The court noted that an expert's opinion, in a proper case, is admissible up to the point where an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. To venture beyond that point, however, is to usurp the jury's function. Accordingly, the Kansas Supreme Court held that it was error for the trial court to permit the witnesses to testify before the jury that, in their opinions, the defendant committed the acts of molestation with which he was charged. *See also State v. McQuillen*, 239 Kan. 590, 721 P.2d 740 (1986).

A similar result was reached in *State v. Lash*, 237 Kan. 384, 699 P.2d 49 (1985). In *Lash*, the defendant was accused of sexually molesting his 15 year old son. A psychologist who had interviewed the son was called to testify as an expert witness. The prosecutor asked the psychologist for his opinion, based on results of his testing and interviewing the son, whether the son had been sexually molested by the father. Over the defense's objection, the court permitted the psychologist to express his opinion whether the son had been sexually molested, but would not permit the expert to testify as to whether the son had been sexually molested by the father. The defendant was acquitted, and the state appealed on a question reserved, namely, did the trial court err in not permitting the expert to testify that in his opinion the son had been sexually molested by the defendant.

The Supreme Court of Kansas upheld the lower court's ruling, stating:

"[T]he opinion testimony of experts on the ultimate issue or issues [*cf.* I.R.E. 704] is not admissible without limitations. Such testimony is admissible only insofar as the opinion will aid the jury in the interpretation of technical facts or when it will assist the jury in understanding the material in evidence. ... Where the normal experience and qualifications of lay jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are inadmissible." 699 P.2d at 51.

In the instant case, expert opinion testimony regarding Hester's identity as the abuser only served to impermissibly evaluate the circumstances and render the same conclusion the jury was asked to render by its verdict. Therefore, the testimony of Jones and Sorini on this issue, the ultimate issue of whether Hester was Brian's abuser, was improperly admitted.

## III

We now examine the remaining issues to the extent necessary for guidance on remand. I.C. § 1–205.[8]

### A.

The first issue concerns admission of Brian's hearsay statements to his mother, Cathy. The general rule is that "[h]earsay is not admissible except as provided by these rules or other rules promulgated by the Supreme Court of Idaho." I.R.E. 802. The trial judge admitted the testimony quoted, *supra* at 689, 760 P.2d at 28. Under both the exception contained in I.R.E. 803(24)[9] and under I.C. § 19–3024.[10]

The admissibility of hearsay pursuant to I.R.E. 803(24) depends upon the trustworthiness of the evidence and the necessity for its use. As explained in the comments to I.R.E. 803(24):

"*Subsection (24): 'other exception,'* recognizes 'that not every contingency can be treated by detailed rules, that the hearsay rule has never been a closed system and should not be ..., and that,

**8.** "1–205. **Disposition of appeals.**—The court may reverse, affirm or modify any order or judgment appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. Its judgment must be remitted to the court from which the appeal was taken. The decisions of the court shall be given in writing; and in giving a decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case presented upon such appeal, and necessary to the final determination of the case."

**9.** See n. 4, *supra.*

**10.** See n. 3, *supra.*

in a particular case, hearsay evidence which does not fall within one of the stated exceptions may have greater probative value than evidence which does.' 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(24)[01] at 286 (Supp. 1983).

"Prior to the adoption of the Federal Rules, the courts determined the admissibility of hearsay evidence by assessing relevancy, need and reliability instead of insisting on compliance with a particular class exception. This same approach should be used in ruling on proffers made pursuant to Rule 803(24).

"As substantially amended by Congress, *Rule 803(24) requires five findings by the trial court. They should be made explicitly on the record unless there is a waiver ... or the basis for the ruling is obvious.*" M. Clark, *Report of the Idaho State Bar Evidence Committee,* C 803, p. 36 (4th Supp.1985) (emphasis added).

■ To be admissible under I.R.E. 803(24), the court must determine that (A) the statement has circumstantial guarantees of trustworthiness equivalent to those in Rules 803(1) to 803(23), (B) the statement is offered as evidence of a material fact, (C) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (D) the general purposes of the rules of evidence, and the interests of justice, will best be served by admission of the statement into evidence. Further, (E) a statement may not be admitted under I.R.E. 803(24) unless its proponent gives the adverse party adequate notice and information regarding use of the statement. Once these elements are met, the I.R.E. 803(24) exception is equally as valid as any other hearsay exception, such as the universally accepted present sense impression and the excited utterance exceptions, etc.

Each of these requirements was met in this case. The adverse party (Hester) had adequate notice and information regarding the statements, as evidenced by his motion *in limine* and subsequent renewals of that motion. Each of the other enumerated factors were specifically found by the trial court. The trial judge stated:

"I don't—I can't think of any rule of evidence in the Idaho Rules that would foursquare make this hearsay statement of the child to the mother admissible, except 803–24, which is a catchall statement. And it specifies other exceptions to the hearsay rule where the availability of the declarant is immaterial, that is, whether he can testify or not.

"This rule says: 'A statement not specifically covered by any of the foregoing exceptions, but having equivalent circumstantial guaranty of trustworthiness, if the court determines that: A. The statement is offered as evidence of a material fact—' and I would sure have to find that, that that would be true. 'B. The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts—' and I would have to find that's true. I don't know whether anybody—what other evidence there could be that would be more probative on the point. And I don't know anywhere else such evidence could be found.

"In other words, there is a necessity, as far as the State's case is concerned, that that be admitted. There is nowhere else they can get this same evidence, except from statements made by the child. And, of course, there was that physical evidence that a few people saw.

"Next is 'C. The general purposes of these rules in the interest of justice will best be served by admission of the statement into evidence.' And then it's got that same caveat as the statute has. It says, 'However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it of his intention to offer the statement and the particulars of it, including the name and address of the declarant.'

"Well, I think that requirement C is satisfied, at least at this point in the process, so that that has to be admitted.

"I can't—I haven't been given anything that would lead me to believe that the child tells a lie or is a liar or fabricates stories. I thought that when I talked to the child, while I wouldn't trust him in here as a witness, that he seemed to have some memory of what has occurred and what has occurred in his life. He was not confused about certain things. If he knew what he was talking about, he spoke right up. If he didn't, he just kept quiet. Seemed to me he didn't say anything.

"So I think the statement has to be admitted. ...."

Thus, the trial judge properly considered the factors of I.R.E. 803(24), and his ruling admitting into evidence Brian's statements to his mother under that exception was correct. Additionally, since the judge found Brian to be "unavailable," I.R.E. 804(b)(5) would also be applicable and would allow the admission of Brian's statements to his mother.[11] "[H]earsay, if of the specified quality, is preferred over complete loss of the evidence of the declarant." M. Clark, *Report of the Idaho State Bar Evidence Committee*, C 804, p. 11 (4th Supp.1985).[12] Accordingly, the trial court did not err in admitting the statements Brian made to his mother.

**B.**

The next issue likely to be encountered on remand involves the admission of Brian's hearsay statements to the expert Sorini. Sorini testified that during the April 24, 1986, counseling session, the following occurred:

"As we were playing at the sand table and visiting, we were talking about his visit that he'd had with dad, and how his dad had come and he was asking when he was going to see him again. It was just kind of little chitchat on the visit with dad. And Brian looked at me and said: You know who hurt my bottom? And I looked and said: You know who hurt your bottom. And he said: My dad. And I asked him: What is his name? And he said Roy. And I said: What house were you at when the touching happened? And he said: My dad's.

"At that point again, I asked him to show me with the dolls what hurt his bottom. And he labeled the adult male doll 'dad' and then pulled back, became non-verbal. His shoulders dropped. He lost eye contact with me and did not want to talk."

Sorini further testified that at a May 13, 1986, counseling session the following took place:

---

**11.** In Rule 803 the declarant's availability is immaterial; Rule 804 expressly applies where the declarant is "unavailable."

**12.** *Accord United States v. Dorian*, 803 F.2d 1439 (8th Cir.1986), *reh'g denied* 1986; *State v. Robinson*, 135 Ariz. 191, 735 P.2d 801, 812 (1987) (*en banc*) ("Admitting [under Rules 803(24) and 804(b)(5) ] this type of reliable, highly probative evidence is consistent with the purposes of the rules of evidence and the interests of justice." Victim was 5 years old.); *D.A.H. v. G.A.H.*, 371 N.W.2d 1 (Minn.Ct.App.1985), *review denied* 1985 (3 year old child sexual assault victim's hearsay admitted under Minn.R.Evid. 803(24)); *State v. Sorenson*, 143 Wis.2d 26, 421 N.W.2d 77, 84 (1988) ("In the absence of a specific hearsay exception governing young children's statements in sexual assault cases [victim was 7 years old], use of the residual exception [I.R.E. 803(24) ] is an appropriate method to admit these statements if they are otherwise proven sufficiently trustworthy."). *See also State v. D.R.*, 109 N.J. 348, 537 A.2d 667 (1988) (N.J. did not have the residual "catchall" exceptions such as I.R.E. 803(24) and 804(b)(5); 3 year old child victim's hearsay statements not admitted under then-existing rules of evidence; however, the court proposed to the legislature that the New Jersey Evidence Act be amended to include an exception similar to that contained in I.R.E. 803(24), 804(b)(5) and I.C. § 19–3024). *But cf. State v. Paster*, 524 A.2d 587, 590 (R.I.1987) (3 year old child victim's statements originally admitted under both the spontaneous utterance and the medical records exceptions. Nevertheless, upon vacating and remanding, the court stated that all earlier statements made by the child were not admissible when the trial court ruled that the 3 year old child was not qualified to be a witness. "When a trial justice has ruled a witness incompetent to testify because the justice is not convinced that the witness is capable of relating a capacity to observe, to recollect, to communicate, or to appreciate truthfulness, the justice has already made the determination that the witness's assertions are unreliable.").

"[A]s we were visiting, we were again at the sand table and playing with small toys and chatting about dad. And he turned and looked at me and said: He put something in my butt and it scratched.

"At that point, we got the dolls out and he used the dolls very briefly and said to me: When I—he said to me: Dad hurt my butt, and showed me insertion with his finger into the child doll's rectal opening, which he had labeled 'Brian.' I asked: What did dad hurt your butt with? And Brian answered to me: His finger."

Regarding a session on May 6th, Sorini testified:

"And then a little bit later he initiated some play with the telephones, the play telephones that I have in my office. And he said to me: My daddy's on the phone. And he handed me the phone. I said: What do you want me to tell him? And he said: Don't touch my bottom again or I'll punch you out of the house. And it was at that point that I asked him who else touched his bottom and got the answer of no one."

Finally, Sorini testified regarding a session on June 13, 1986:

"And I told him far into the session that I was sorry that touching had happened to make his bottom sore. ... And later he went to the anatomically correct dolls and labeled again the child male doll 'Brian,' the adult male doll 'dad' and said to me: He put it in my bottom. And I said: Show me what got put in your bottom. And tell me. And he said: I don't want to tell you. And declined again to show me what happened with the dolls. And I said to him: Who hurt your bottom? And his response to me was: Just my dad. And then I asked him: Who made your butt sore when you went to the doctor? And he said: Just my dad."

■ Hester filed a motion *in limine* prior to trial requesting an order providing, *inter alia,* that the state be prohibited from introducing "[a]ny testimony regarding statements made by the alleged three (3) year old victim describing any acts of sexual or physical abuse committed with or upon the child. . . ." The trial judge did not make a ruling on the motion, and the defendant failed to further object at trial when Sorini's testimony was offered. Even though defense counsel did not get an express ruling from the trial court regarding this issue, Hester contends that the motion *in limine* serves as a continuing objection. As authority he cites *Davidson v. Beco Corp.,* 112 Idaho 560, 733 P.2d 781 (Ct.App.1986), which, on petition for review to this Court, was affirmed in part, reversed in part and remanded on another issue. *Davidson v. Beco Corp.,* 114 Idaho 107, 753 P.2d 1253 (1987). The state contends, on the other hand, that Hester failed to preserve this issue for appeal because Hester's counsel failed to obtain a trial court ruling. We agree with the latter contention.

Since the trial judge never ruled on Hester's motion *in limine* as it affects Sorini's testimony, *Davidson v. Beco Corp., supra,* is inapposite. The Court of Appeals in *Davidson* stated, "[W]e hold that where a judge has denied a motion *in limine,* failure to renew the objection at trial will not ordinarily constitute a waiver of the issue on appeal." 112 Idaho at 564, 733 P.2d at 785. Then, in a footnote the Court of Appeals further stated, "Our holding simply means that if a motion *in limine* has been made and denied, defense counsel need not repeat the objection when the evidence is offered during the trial." *Id.,* n. 3, p. 564, 733 P.2d at 785.

■ The motion *in limine* in the instant case was not denied by the trial judge. Hence, the holding in *Davidson* is not determinative of the issue. Where no advance ruling has been obtained, counsel must continue to object as the evidence is presented. Because a motion *in limine* is based on an alleged or anticipated factual scenario, without the benefit of all the other actual evidence which will be admitted at trial, the trial judge will not always be able to make an informed decision regarding the admissibility of the evidence prior to the time the evidence is actually presented at trial. It is often difficult, and sometimes

impossible, for the trial judge to make a proper ruling without the benefit of all the other evidence admitted at trial. There may also be difficulties in making an adequate record of the proposed evidence during pretrial proceedings. In short, motions *in limine* seeking advanced rulings on the admissibility of evidence are fraught with problems because they are necessarily based upon an alleged set of facts rather than the actual testimony which the trial court would have before it at trial in order to make its ruling. The trial judge, in the exercise of his discretion, may decide that it is inappropriate to rule in advance on the admissibility of evidence based on a motion *in limine*, but may defer his ruling until the case unfolds and there is a better record upon which to make his decision. In such an event, a litigant who has made a motion *in limine* requesting advance rulings on the admissibility of evidence must continue to assert his objections as the evidence is offered or his objections are not preserved. Otherwise a party could make a blanket motion *in limine* prior to trial and then be relieved of any obligation to object as the evidence unfolds at trial. However, we continue to adhere to the holding in *Davidson v. Beco Corp., supra,* that if the motion *in limine* is made, and the trial court unqualifiedly rules on the admissibility or inadmissibility of the evidence prior to trial, no further objection at trial is required in order to preserve the issue for appeal.

Accordingly, questions regarding the admissibility of Brian's hearsay statements to Sorini have not been preserved for appeal. *Workman Family Partnership v. City of Twin Falls,* 104 Idaho 32, 655 P.2d 926 (1982). Nevertheless, on retrial witness Sorini's testimony regarding Brian's hearsay statements would be admissible if the requirements of I.R.E. 803(24) or 804(b)(5) are met. *See* Part III(A), *supra.*

Reversed and remanded for a new trial consistent with this opinion.

SHEPARD, C.J., and HUNTLEY, J., concur.

## APPENDIX A

In the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada

Case No. 13615

The State of Idaho, Plaintiff,

v.

Roy Hester, Defendant.

### MOTION IN LIMINI

COMES NOW The above named Defendant, by and through his Attorney of Record, Gar Hackney, and hereby moves this Honorable Court for its order prohibiting the State from introducing into evidence at the trial of this case the testimony regarding the following matters:

a) The testimony of the three (3) year old minor child, Brian Hester, the alleged victim, upon the grounds that the child is not competent to testify under I.R.E. 601 and 603.

b) Any testimony by experts or counselors of the alleged victim that he is or is not capable of distinguishing truth from falsehood or fantasy from reality, on the grounds that such opinions are not the proper subject matter for expert testimony and invade the province of the jury.

c) Any testimony regarding statements made by the alleged three (3) year old victim describing any acts of sexual or physical abuse committed with or upon the child upon the grounds that the time, content and circumstances of the statements do not provide sufficient indicia of reliability and/or other foundation is lacking under I.C. 19-3024.

d) Any testimony by any expert witnesses expressing the opinion that the alleged victim in this matter does or does not exhibit the psychological characteristics of an abused child.

e) Any testimony by any expert witnesses expressing the opinion that the Defendant, George Roy Hester, does or does not exhibit the psychological characteristics of a child abuser or molester.

DATED This 22 day of October, 1986.
LYNN, SCOTT & HACKNEY
By(s) Gar Hackney
GAR HACKNEY
Attorney for Defendant

BISTLINE, Justice, concurring only in judgment reversing and remanding for a new trial.

My view of Part III A of the Justice Bakes' opinion to some extent parallel those of Justice Johnson when one reads the statement of the district court, "... I wouldn't trust him in here as a witness ..." (maj. op. at 698, 760 P.2d at 37), and goes on to read in fn. 12 (maj. op. at 698, 760 P.2d at 37), the holding of the Rhode Island Supreme Court in *State v. Paster*, 524 A.2d 587 (1957). The door is closed tightly against joining a majority opinion which states that "the trial court did not err in admitting the statement Brian made to his mother." (Maj. op. at 698, 760 P.2d at 37).

"Statement" is a word of art as used in the legal profession. I do not doubt but that Justice Bakes actually meant to convey the thought that he approved of the admission of the mother's testimony recounting what the child "said" to her. The child obviously was not making a statement, i.e., a "formal narrative of facts ... and in a limited sense a formal, exact, detailed presentation." Black's Law Dictionary, Fifth Ed. 1979, p. 1263. Only the mother and God know for certain how the mother interviewed her own child. Most mothers can persuade, coax, and lead a child of that age into saying almost anything. And, compounding the possible viciousness of that situation, most children of that age are inclined to try to please—say what the child perceives to be wanted of him. I do not base my views on the two rules of evidence both of which are seen as controlling by Justices Bakes and Johnson—in arriving at contrary conclusions—but on Rhode Island case law, which to my mind is predicated upon common sense and my own notions of what is judicially fair. I do not subscribe to, and have never subscribed to the proposition stated in Rule 1102:

> **Rule 1102. Effect on evidentiary statutes and rules.**—Statutory provisions and rules governing the admissibility of evidence, to the extent they are evidentiary and to the extent that they are in conflict with applicable rules of Idaho Rules of Evidence, are of no force or effect. [Adopted January 8, 1985, effective July 1, 1985.]

The Idaho State Bar, through its Board of Commissioners, about five or six years ago, undertook to rewrite the laws of evidence, and a committee was appointed to fulfill that function. No one from this court served on that committee. Since territorial days, the legislature had occupied the field of evidence—what is now Title 19 ch. 30 of the Idaho Code, *Witnesses in Criminal Proceedings*, and what is now Title 9 of the Idaho Code, *Evidence*.

At a joint meeting of the Supreme Court and the Bar Commissioners, the question came up as to the means by which the committee's revision would be made effective—whether by adoption through legislative enactment, or, by promulgation as rules of court. A majority of the Court let it be known that the latter route seemed the more desirable. I was not in that majority, being of the firm persuasion that such matters of highly substantive law belonged to *the people* who speak through their legislature. In due time the Bar Commissioners and its committee turned their work product over to the Court. The Court promulgated that work product into court rules, and concocted Rule 1102 of its own volition. The Bar Commission and the committee did not propose any such rule. Upon what basis, other than divine right, that the court so conducted itself is yet unknown to me.

Interestingly, in the opinions which we release today, Justice Bakes in his opinion cites side-by-side the legislature's section 19–3024, and the court's Rule of Evidence 803—both of which are footnoted. (Maj. op. at 692, 760 P.2d at 31).

Justice Johnson, in his opinion, touts for the adoption of procedures which are set forth in a rule from the Model Rules of Evidence, which he footnotes in full. It in general is not much unlike the legislature's § 19–3024.

This could be an even more interesting hodge-podge were either Justices Bakes or Justice Johnson to have set forth the legislature's 1986 enactment—the language of which was obviously prompted by and borrowed from this Court's language in its Rule 1102—as to who is in charge around here. I.C. § 11–809 reads:

**19–809A. Child's out of court statements admissible in preliminary examinations.**—*Notwithstanding* the provisions of sections 19–808 and 19–809, Idaho Code, and *any rules promulgated by the Idaho supreme court,* in any preliminary examination, the magistrate shall receive into evidence any out-of-court statement of a child under the age of ten (10) years provided the magistrate finds the source of the evidence credible. [I.C. § 19–809A, as added by 1986, ch. 195, § 1, p. 493.]

Compounding all of this, one sees Part III of Justice Bakes' opinion opening with the statement the Court is required to give guidance for the ensuing second trial per I.C. § 1–205, which is set out in full by fn. 8 (mag. op. at 696, 760 P.2d at 35).

As with matters of evidence, both in civil and criminal proceedings, this § 1–205 goes back to territorial days. Just how it has survived while at the same time the Court deemed itself not bound by the legislature pre-occupying the field of evidence, is beyond me. What this Court on appeals does *is* strictly a procedural matter, but that cannot be said as to substantive matters of evidence. It would seem to me that on most occasions when this Court grants a new trial, it may not always be helpful to direct the district court in advance as to how to rule on matters which may or may not develop at trial.

In short, I am in agreement that there was prejudicial error which requires affording the defendant a new trial. Beyond that, I do not believe it wise or necessary to venture.

JOHNSON, Justice, dissenting.

I concur with the result here and with the opinion of Justice Bakes, except part III upholding the admissibility of Brian's hearsay statements to his mother and to the psychotherapist, Sorini.

I also note that it is my opinion that to the extent that I.C. § 19–3024 attempts to prescribe the admissibility of hearsay evidence and is in conflict with the Idaho Rules of Evidence, it is of no force or effect. I.R.E. 802 and 1102.

Once the trial court ruled that the child was not qualified to testify, the trustworthiness requirement of I.R.E. 803(24) and 804(b)(5) was not present. As the Rhode Island Supreme Court said in a similar case:

When a trial justice has ruled a witness incompetent to testify because the justice is not convinced that the witness is capable of relating a capacity to observe, to recollect, to communicate, or to appreciate truthfulness, the justice has already made the determination that the witness's assertions are unreliable. Though there may be instances in which a witness is competent at the time he or she makes an assertion and later, at the time of trial, due to the onset of senility or mental illness, is incompetent, such does not hold true with infants. If an infant is ruled incompetent at the time of trial because she is only four years old, assertions made by that infant a year earlier cannot be considered inherently more reliable. Logic dictates that, if anything, they are less reliable.

. . . .

This court recognizes that with certain crimes the evidence is sometimes so concealed that it is nearly impossible to present enough legal evidence to sustain a conviction. Nonetheless, such instances do not warrant admitting statements by an incompetent witness untested by cross-examination into evidence where the liberty of one charged with a serious crime hangs on the balance. ... Under our system of justice it is far better to have many guilty persons go free than to have one innocent person be wrongly accused.

*State v. Paster,* 524 A.2d 587, 590–91 (R.I. 1987).

Also, it is my opinion that before we allow hearsay statements made by children in cases such as this, we should require procedures such as that contained in Rule 807 of the Model Rules of Evidence.

### Rule 807. Child Victims or Witnesses

(a) A hearsay statement made by a minor who is under the age of [12] years at the time of trial describing an act of sexual conduct or physical violence performed by or with another on or with that minor or any [other individual] [parent, sibling or member of the familial household of the minor] is not excluded by the hearsay rule if, on motion of a party, the minor, or the court and following a hearing [in camera], the court finds that (i) there is a substantial likelihood that the minor will suffer severe emotional or psychological harm if required to testify in open court; (ii) the time, content, and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness; (iii) the statement was accurately recorded by audio-visual means; (iv) the audio-visual record discloses the identity and at all times includes the images and voices of all individuals present during the interview of the minor; (v) the statement was not made in response to questioning calculated to lead the minor to make a particular statement or is clearly shown to be the minor's statement and not the product of improper suggestion; (vi) the individual conducting the interview of the minor is available at trial for examination or cross-examination by any party;

and (vii) before the recording is offered into evidence, all parties are afforded an opportunity to view it and are furnished a copy of a written transcript of it.

(b) Before a statement may be admitted in evidence pursuant to subsection (a) in a criminal case, the court shall, at the request of the defendant, provide for further questioning of the minor in such manner as the court may direct. If the minor refuses to respond to further questioning or is otherwise unavailable, the statement made pursuant to subsection (a) is not admissible under this rule.

(c) The admission in evidence of a statement of a minor pursuant to subsection (a) does not preclude the court from permitting any party to call the minor as a witness if the interests of justice so require.

. . . .

(e) The requirements for admissibility of a statement under this rule do not preclude admissibility of the statement under any other exception to the hearsay rule.

I would reverse the conviction here also on the basis of the admission of the hearsay statements of the child to which his mother and Sorini testified.