HORTON, J., dissenting.
I join in the Court's decision to affirm Hall's convictions for first-degree murder, first-degree kidnapping and rape, although I have a slightly different view on two guilt phase issues that I will briefly discuss. Although I agree with much of the Court's discussion regarding the penalty phase and post-conviction relief proceedings, I respectfully dissent from the Court's decision to affirm the death penalty.
My analysis of the district court's denial of Hall's challenges to Jurors 1 and 60 for cause would be substantially shorter than the discussion in Part III(A)(3) of the Court's decision. Hall failed to persuade me that any of the jurors who sat on his case were biased. Thus, any error in failing to excuse Jurors 1 and 60, who did not sit on his case, was harmless. State v. Ramos , 119 Idaho 568, 569-70, 808 P.2d 1313, 1314-15 (1991) ; State v. Wozniak, 94 Idaho 312, 319, 486 P.2d 1025, 1032 (1971).
I also have a different view regarding the propriety of the admission of Detective Smith's testimony relating to the elimination of Chris Johnson as a suspect in Ms. Henneman's murder, addressed in Part III(A)(5) of the Court's decision. I do not view the introduction of a lead detective's opinion as to whether someone has or has not committed a crime as simple lay testimony. In my view, such testimony resembles the expert opinion testimony as to the identity of a perpetrator which this Court forbade in State v. Hester , 114 Idaho 688, 695-96, 760 P.2d 27, 34-35 (1988). For that reason, I believe that the district court erred by admitting the testimony. Nevertheless, the evidence of Hall's guilt was overwhelming and the introduction of this testimony was harmless error.
As to sentencing phase issues, I have a slightly different view regarding the return of the Indictment Part II by the same grand jury that received evidence regarding Hall's murder of Cheryl Hanlon, a subject discussed in Part III(B)(14) of the Court's opinion. I believe that any error in the grand jury proceedings was rendered irrelevant for appellate purposes by reason of Hall having received a fair trial. State v. Grazian , 144 Idaho 510, 517, 164 P.3d 790, 797 (2007), abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr. , 151 Idaho 889, 265 P.3d 502 (2011). In Grazian , we held that "[a]lleged errors in a grand jury proceeding will not be examined on appeal where the defendant has been found guilty following a fair trial." Id . (citing State v. Mitchell , 104 Idaho 493, 500, 660 P.2d 1336, 1343 (1983) and State v. Smith , 135 Idaho 712, 716-17, 23 P.3d 786, 790-91 (Ct.App.2001) ).
I dissent from Part III(B)(21)(E) of the Court's opinion holding that Instruction 49, relating to the governor's pardon and commutation authority, was not error. The Court correctly notes that the United States Supreme Court upheld the use of the Briggs Instruction in California v. Ramos , 463 U.S. 992, 103 S.Ct. 3446 (1983). However, I think that the California Supreme Court correctly decided this issue on remand, when it held that the instruction violated the defendant's due process rights under the state constitution, People v. Ramos , 37 Cal.3d 136, 207 Cal.Rptr. 800, 689 P.2d 430, 444 (1984), because such an instruction "in reality serves no legitimate purpose." Id . 207 Cal.Rptr. 800, 689 P.2d at 443. Although the California court identified many problems with the use of the Briggs Instruction, I am particularly persuaded by its observation that:
The first vice of such an instruction ... is that it may tend to diminish the jury's sense of responsibility for its action. As the Supreme Court of Delaware explained: "[K]nowledge on the part of the jury that there is possible review by other governmental authorities may cause that jury to avoid its responsibility.... [S]uch comment may imply to a jury that if it mistakenly convicts an innocent man, or mistakenly fails to recommend mercy, the error may be corrected by others; under such circumstances, a conviction is more likely and a recommendation of mercy less likely."
*1134 Id . (quoting Smith v. State , 317 A.2d 20, 25 (Del. 1974) ).
I also dissent from the Court's decision to affirm Hall's death sentence because the jury received irrelevant and prejudicial evidence without any guidance from the trial court. At the outset, I should note that I concur with the Court's holding that:
the admission of evidence in capital sentencing proceedings is governed by Idaho Code § 19-2515(6), which provides that "the state and the defendant shall be entitled to present all relevant evidence in aggravation and mitigation." Thus, under both the plain language of the statute and this Court's prior decisions, the Idaho Rules of Evidence do not apply to capital sentencing proceedings. State v. Dunlap , 155 Idaho 345, 375, 313 P.3d 1, 31 (2013).
I also join in the Court's definition of relevant evidence in capital sentencing proceedings which adopts the definition found in Idaho Rule of Evidence 401. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " State v. Sheldon , 145 Idaho 225, 228, 178 P.3d 28, 31 (2008) (quoting I.R.E. 401 ).
My view is that Idaho Code section 19-2515(8) defines the "fact[s] that [are] of consequence to the determination of the action" in a capital sentencing proceeding. The jury is charged with the following responsibilities:
Upon the conclusion of the evidence and arguments in mitigation and aggravation:
(a) With regard to each statutory aggravating circumstance alleged by the state, the jury shall return a special verdict stating:
(i) Whether the statutory aggravating circumstance has been proven beyond a reasonable doubt; and
(ii) If the statutory aggravating circumstance has been proven beyond a reasonable doubt, whether all mitigating circumstances, when weighed against the aggravating circumstance, are sufficiently compelling that the death penalty would be unjust.
I.C. § 19-2515(8) (2004). Thus, the facts that are of consequence to the determination of a capital sentencing proceeding are: (1) the existence of one or more statutory aggravating circumstances as defined in I.C. § 19-2515(9) ; and (2) all mitigating circumstances. The jury then is tasked with the duty of weighing all mitigating circumstances it finds to exist against each individual statutory aggravating circumstance to determine whether such mitigating circumstances "are sufficiently compelling that the death penalty would be unjust."
Significantly, this statutory scheme does not recognize or contemplate the jury's consideration of "non-statutory" aggravating circumstances. Curiously, although Idaho Code section 19-2515(5)(a) specifically provides for the introduction of victim impact statements,[1] the jury is not asked to consider such statements when performing its duties under Idaho Code section 19-2515(8)(a). In short, the jury's statutory charge is not to weigh all mitigating circumstances against each individual statutory aggravating circumstance plus other, non-statutory aggravating circumstances plus victim impact information.
The Court responds to Hall's contention that the jury improperly received evidence of non-statutory aggravating circumstances with the observation that "[b]eginning in State v. Creech , 105 Idaho 362, 369-70, 670 P.2d 463, 470-71 (1983), this Court recognized the admissibility of non-statutory aggravating circumstances in death penalty cases." The Court then quotes from our holding in Creech . There, this Court stated:
*1135 The court is not limited as to the circumstances it may find in aggravation to those listed under I.C. § 19-2515(f). Thus, that section of the court's findings denominated "5. Facts and Arguments Found in Aggravation," although including circumstances not statutorily listed and not expressly found beyond a reasonable doubt, is not error. I.C. § 19-2515(a) permits the court, upon the suggestion of either party that there are circumstances which might properly be considered in aggravation or mitigation, to hear those circumstances. That language strongly suggests that a judge should hear all relevant evidence which either party desires to set forth. Such an interpretation is not contradicted by I.C. § 19-2515(f), which merely lists the statutory aggravating circumstances, at least one of which must exist beyond a reasonable doubt if the ultimate sanction of death is to be imposed. As above stated, a wide scope of evidence of the personality and background of the accused must be available to the trial judge in order for the sentence to fit the individual defendant. Williams v. New York , 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). We hold that the list of aggravating factors set forth in the statute is not exclusive, albeit one of those factors must necessarily be found to exist beyond a reasonable doubt for a sentence of death to be upheld. Where as here the sentencing judge formally finds, and his findings are substantiated, that there are statutory aggravating factors and those factors are not outweighed by mitigating circumstances, he has complied with the statutory directives. We find no error.
Creech , 105 Idaho at 369-70, 670 P.2d at 470-71. Subsequent to this decision, we have reiterated this holding on five occasions. See State v. Creech , 132 Idaho 1, 14, 966 P.2d 1, 14 (1998) ("[W]e have already held and reaffirm our holding that it was not error for the district court to weigh these non-statutory aggravating factors and that the list of statutory aggravating factors found in I.C. § 19-2515(h) is not exclusive. As long as the court finds at least one statutory aggravating factor beyond a reasonable doubt, it is free to consider and weigh other aggravating factors individually as well."); State v. Porter , 130 Idaho 772, 789, 948 P.2d 127, 144 (1997) ; State v. Charboneau, 116 Idaho 129, 150-51, 774 P.2d 299, 320-21 (1989) ; Sivak v. State , 112 Idaho 197, 210, 213, 731 P.2d 192, 205, 208 (1986) ; State v. Sivak , 105 Idaho 900, 906, 674 P.2d 396, 402 (1983).
The difficulty is that our more recent decisions reiterating the ruling in Creech fail to acknowledge that the statutory basis upon which that case was decided no longer exists. The version of Idaho Code section 19-2515(a) in effect at the time of the Creech decision provided:
After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral or written suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct.
I.C. § 19-2515(a) (1977).
By the time Hall's sentencing proceeding took place, the language of Idaho Code section 19-2515(a) upon which the Creech court relied had been repealed. The amended statute simply authorized the parties "to present all relevant evidence in aggravation and mitigation." 19-2515(6) (2004). Again, the relevance of evidence turns on the questions the jury is asked to answer. Those questions do not include weighing non-statutory aggravating circumstances or victim impact information.
At this point, I must emphasize that my views are based upon the structure of Idaho's capital sentencing statute, not on constitutional grounds. Clearly, it would not be unconstitutional for our statutory scheme to explicitly authorize consideration of non-statutory aggravating circumstances. Zant v. Stephens , 462 U.S. 862, 878, 103 S.Ct. 2733 (1983) ("statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not *1136 require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.") Likewise, there would be no constitutional violation if the statutory scheme provided that the jury was to weigh victim impact information in reaching its decision whether imposition of the death penalty was unjust:
We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." Booth [v. Maryland] , 482 U.S. [496 (1991) ], at 517, 107 S.Ct. at 2540 [96 L.Ed.2d 440] (WHITE, J., dissenting) (citation omitted). By turning the victim into a "faceless stranger at the penalty phase of a capital trial," [South Carolina v.] Gathers , 490 U.S. [805], at 821, 109 S.Ct. [2207] at 2216 [104 L.Ed.2d 876 (1989) ] (O'CONNOR, J., dissenting), Booth deprives the State of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.
Payne v. Tennessee , 501 U.S. 808, 825, 111 S.Ct. 2597 (1991).
As I do not believe that non-statutory aggravating evidence is relevant under the statutory scheme, I believe that admission of evidence of his prior felony convictions for grand theft and escape prior to this murder and his post-murder involvement in robberies, thefts, and acts of violence against women was error. I further believe that admission of the evidence relating to Hall's rape of N.O. was error. Although it clearly demonstrates that Hall had a propensity to commit rape through the use of force and fear, in the absence of evidence that he actually attempted to kill N.O., I do not believe that it tended to show that he had a propensity to commit murder as the Court holds.
The introduction of such evidence was not harmless. I have no doubt but that the jury viewed the evidence in the same fashion as the Court, i.e., that it showed Hall's "escalation in general lawlessness."
Because the jury received inadmissible evidence and an erroneous instruction in the penalty phase, I respectfully dissent from the decision to affirm Hall's death sentence.

The statute was amended, effective March 24, 2004, to provide that:
Information concerning the victim and the impact that the death of the victim has had on the victim's family is relevant and admissible. Such information shall be designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community by the victim's death. Characterizations and opinions about the crime, the defendant and the appropriate sentence shall not be permitted as part of any victim impact information.
I.C. § 19-2515(5)(a) (2004).